PENOKIE v MICHIGAN TECHNOLOGICAL UNIVERSITY

Docket Nos. 78-532, 78-533. Submitted May 10, 1979, at Marquette.—
Decided November 19, 1979.

Plaintiffs Kenneth Penokie, individually and as President of the
Michigan Higher Education Student Association, and the Mich-
igan Higher Education Student Association commenced an
action in Houghton Circuit Court against Michigan Technologi-
cal University and Raymond L. Smith, President of Michigan
Technological University, to compel the defendants to provide
the plaintiffs with the name and salary or wage of each of the
persons employed by the university from 1970 to 1978, pursu-
ant to the plaintiffs' request for the information under the
Michigan Freedom of Information Act. Gerald J. Caspary and
other university employees intervened as defendants. Stephen
D. Condon, J., ordered the defendants to provide the informa-
tion requested. The defendants and the intervening defendants
appeal. The plaintiffs cross-appeal from the refusal of the trial
court to award attorneys' fees, costs or disbursements to plain-
tiffs. *Held:*

1. The Freedom of Information Act requires a public body to
make available to all persons "full and complete information
regarding the affairs of government". There are several exemp-
tions from the disclosure requirement. The defendants, on
appeal, rely on the provision which exempts from disclosure as
a public record "information of a personal nature where the
public disclosure of the information would constitute a clearly
unwarranted invasion of an individual's privacy". The trial
court was correct in applying the balancing test used by the
Federal courts in their interpretation of the corresponding
privacy provision of the Federal Freedom of Information Act.

2. Exemptions such as the one relied on by the defendants
are to be strictly construed and the government agency bears
the burden of establishing that the denial of a request for

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 66 Am Jur 2d, Records and Recording Laws §§ 32, 34, 36, 44-
46.
[2] 66 Am Jur 2d, Records and Recording Laws § 40.
[5] 20 Am Jur 2d, Costs § 1.

disclosure is statutorily supported. The "privacy exemption" applies only to "clearly unwarranted" invasions of privacy. Disclosure of the names and salaries of employees of the defendant university is not a "clearly unwarranted" invasion of personal privacy. The defendants erred in denying plaintiffs' request for disclosure of the information.

3. The Freedom of Information Act expressly provides that a party who challenges a denial of disclosure and prevails is entitled to an award of reasonable attorneys' fees, costs and disbursements. This is a statutory exception to the "public question-no costs" rule. The trial court entered judgment for the plaintiffs and was, therefore, obligated to make the requested award.

The judgment requiring disclosure is affirmed and the matter is remanded for the limited purpose of a determination of plaintiffs' reasonable attorneys' fees, costs and disbursements.

1. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION ACT — STATUTORY CONSTRUCTION — EXEMPTIONS FROM DISCLOSURE — STATUTES.

Federal courts have uniformly followed a policy of narrowly construing the disclosure exemptions in the Federal Freedom of Information Act; in Michigan also, the government agency bears the burden of establishing that denial of a request for disclosure under the state Freedom of Information Act is statutorily supported; claimed exemptions must be supported by substantial justification and explanation, not merely by conclusory assertions (5 USC 552[a][4][B], MCL 15.240[1]; MSA 4.1801[10][1]).

2. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION ACT — EXEMPTIONS FROM DISCLOSURE — PERSONAL PRIVACY — STATUTES.

The balancing test used by the Federal courts to interpret the provision of the Federal Freedom of Information Act which exempts from disclosure to the public "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" requires an initial determination of whether disclosure would constitute an invasion of privacy and, if so, how serious an invasion; determination as to whether an invasion of privacy is "clearly unwarranted" requires consideration of the public purpose of the party requesting the information, the possibility that the purpose could be accomplished without disclosure, the scope of the request and the availability of alternative sources for obtaining the information (5 USC 552[b][6]).

3. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION ACT — EXEMPTIONS FROM DISCLOSURE — JUDICIAL INTERPRETATION — PERSONAL PRIVACY — STATUTES.

> Judicial interpretation of the privacy exemption of the Freedom of Information Act, in addition to being guided by the reason of the Federal and state decisions interpreting similar provisions, must reflect Michigan's longstanding policy of citizen accessibility to public records (MCL 15.243[1][a]; MSA 4.1801[13][1][a]).

4. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION ACT — EXEMPTIONS FROM DISCLOSURE — CONFIDENTIALITY — STATE UNIVERSITIES — ATTORNEY GENERAL OPINIONS.

> The boards of control of state universities may not be held to a different standard of accountability than other governmental units with regard to withholding information from the public concerning government salaries paid out of public money; while it must be recognized that, in some limited instances, the public interest may require confidentiality, the records of the names and compensation of employees of state universities are subject to public examination, inspection and copying for any lawful purpose (OAG 1973-1974, No 4794, p. 70 [August 7, 1973]).

5. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION ACT — ATTORNEYS' FEES — STATUTES.

> A plaintiff who is successful in a challenge to a state agency's denial of the plaintiff's request for disclosure of information under the Freedom of Information Act is statutorily entitled to an award of reasonable attorney's fees, costs and disbursements (MCL 15.240[4]; MSA 4.1801[10][4]).

*Garfield W. Hood,* for plaintiffs.

*Butzel, Long, Gust, Klein & VanZile* (by *Robert M. Vercruysse, Virginia F. Metz* and *Daniel G. Galant),* for defendants.

*Vairo, Mechlin, Tomasi & Johnson,* for intervening defendants.

*Amici Curiae: Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gerald F. Young, Paul J. Zimmer* and *Richard P. Gartner,* Assistants Attorney General.

*Beier, Howlett, McConnell, Googasian & McCann,* for Oakland University.

Before: D. F. WALSH, P.J., and BRONSON and T. M. BURNS, JJ.

D. F. WALSH, P.J. Defendants, Michigan Technological University and its president Raymond L. Smith, and intervening defendants, certain employees of the university, appeal entry of judgment for plaintiffs by the Houghton County Circuit Court on January 20, 1978. Defendants were ordered to provide plaintiffs with the name and salary or wage of each of the persons employed by the university from 1970 to the present time, pursuant to plaintiffs' request under the Michigan Freedom of Information Act, MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.* (hereinafter referred to as the FOIA). Plaintiffs cross-appeal the refusal of the trial court to award them attorneys' fees, costs or disbursements under MCL 15.240(4); MSA 4.1801(10)(4).

The facts are not in dispute and were stipulated to be as follows:

"1. Pursuant to Section 10 of the Freedom of Information Act, MSA 4.1801(10), this Court has jurisdiction to hear this action.

"2. Plaintiff KENNETH PENOKIE is a citizen and taxpayer of the State of Michigan, and President of Plaintiff Michigan Higher Education Student Association, Inc., who resides in Lansing, Michigan.

"3. Plaintiff MICHIGAN HIGHER EDUCATION STUDENT ASSOCIATION, INC., is a Michigan non-profit corporation with its principal place of business located at Box 16281, Lansing, Michigan, which is engaged in representing student bodies and/or student governments at various Michigan institutions of higher learning.

"4. Defendant MICHIGAN TECHNOLOGICAL UNIVERSITY is a public university and institution of higher education located in the City of Houghton, County of Houghton, and State of Michigan organized and existing by virtue of the Constitution and laws of the State of Michigan.

"5. Defendant RAYMOND L. SMITH is President of Michigan Technological University and is its chief-executive officer.

"6. Plaintiffs are 'persons' within the definitions set forth in the Freedom of Information Act, MSA 4.1801(1) *et seq.*

"7. MICHIGAN TECHNOLOGICAL UNIVERSITY is a 'public body' as defined within the aforesaid Freedom of Information Act.

"8. That by letter dated February 12, 1976, * * * and received by Defendants prior to the effective date of the Freedom of Information Act, Plaintiffs requested certain records from the Defendant, including '* * * a copy of the salaries for fiscal years 1971 through 1975 of every employee of Michigan Technological University', and that by letter dated March 3, 1976, from the Chairman of the Board of Control of MICHIGAN TECHNOLOGICAL UNIVERSITY * * *, Defendants refused to provide the requested information.

"8A. That by letter dated April 12, 1977, * * * and received by Defendants after the effective date of the Freedom of Information Act, Plaintiffs requested certain public records from Defendants, including:

"A. The number of persons employed by Michigan Technological University;

"B. The names of all persons employed by Michigan Technological University;

"C. The salary or hourly wage of each such employee from 1970 to the present;

"D. Michigan Technological University's average budget for fiscal years 1970 to present, setting forth those portions of each total yearly budget apportioned between teaching salaries, administrative salaries, and other similar classifications.

"E. With respect to administrative and teaching per-

sonnel, the educational qualifications of each employee; and

"F. Actual yearly expenditures in such categories if different than budgetary allocations.

"9. That by letter dated April 19, 1977, * * * Defendant MICHIGAN TECHNOLOGICAL UNIVERSITY, through its designated Freedom of Information Officer E. M. Reini, provided Plaintiffs with all requested information with the exception that Defendant refused to provide Plaintiffs with the salaries and/or hourly wages of each employee of Defendant MICHIGAN TECHNOLOGICAL UNIVERSITY from 1970 through the present.

"10. That on April 19, 1977, E. M. Reini, the designated Freedom of Information Act Officer, sent KENNETH PENOKIE, President of the Michigan Higher Education Student Association, Inc. a 'Notice of Denial of a Public Record' * * * wherein it was asserted the University would not provide the salary or hourly wage rate of each employee from 1970 to the present for the reason that said public record was exempt from disclosure pursuant to Section 13(1)(a), MSA 4.1801(13)(1)(a), asserting that the said information is of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy.

"11. In the Fall of 1976 issue of 'The Faculty Forum MTU' the results of the Faculty Association's Salary Publication Survey were published * * *. Of two hundred and thirty-nine (239) faculty polled, only seventy-nine (79) were in favor of disclosing their individual names and salaries while one hundred and fifty-five (155) were opposed to public disclosure of their names and individual salaries.

"12. Defendant MICHIGAN TECHNOLOGICAL UNIVERSITY presently publishes salary ranges, distribution and related statistical information, without revealing individual salaries, which is available for public review, however, that information was not requested by plaintiff.

"13. Defendant MICHIGAN TECHNOLOGICAL UNIVERSITY competes nationally with both public and

private colleges, universities, industry and the government for the best qualified employees it can successfully recruit for its faculty and staff.

"14. Many of Defendant's competitors for quality employees are under no obligation to make any information regarding names and salaries of its employees available for public scrutiny.

"15. House Bill No. 6085 as of December 1, 1976, * * * contained Section 12(a) which provided:

" 'Sec. 12. The following categories of writings are specifically made available to the public under this act if those writings exist and are not exempt under Section 13.

" '(a) The name, sex, ethnicity, salary, including overtime or overload and any other supplementary payments, title, job description, and dates of employment of an employee or officer of a public body unless the disclosure of the title or job description would endanger the life or physical safety of law enforcement personnel.'

"House Bill No. 6085 eventually was enacted as the Freedom of Information Act with this provision deleted on or after December 22, 1976.

"16. Intervening Defendants and a substantial number of University employees have asserted by letter to Defendant, Michigan Technological University, that any disclosure by the University of their salary and/or hourly wage rate or any information from the personnel files relating to their educational accomplishments and qualifications for the positions they hold at the University would be a violation of their constitutional right to privacy. Said Defendants and employees have further stated that they shall hold the University accountable for any breach of their claim to privacy."

The trial court held, and defendants did not dispute, that the requested salary records are "public records" within the meaning of the FOIA and the common law. MCL 15.232(c); MSA 4.1801(2)(c). The court rejected plaintiffs' contention that they had a right to disclosure of the

salary information under the common law, finding that the FOIA preempts the common law. This ruling has not been challenged on appeal. With respect to the FOIA request, however, the court ordered disclosure of the information.

Defendants first argue that the Legislature's intent to exempt salary information from public disclosure is evident from the fact that an express provision requiring such disclosure, which appeared in an earlier version of the proposed legislation, was deleted from the version finally enacted.

We agree with the trial court that a more reasonable explanation for the deletion is found in the Legislature's desire to avoid the pitfalls of overspecification.[1] Rather than specifying what records would be subject to disclosure the Legislature chose to provide that, unless expressly exempt under § 13 of the FOIA, all public records are subject to public disclosure. Deletion of language expressly providing for disclosure of specific information furthered the legislative purpose to make available to all persons "full and complete information regarding the affairs of government". MCL 15.231(2); MSA 4.1801(1)(2).

The primary argument advanced by defendants is that the requested information was exempt from disclosure under the provisions of § 13(1)(a) of the act which provides:

"Sec. 13. (1) A public body may exempt from disclosure as a public record under this act:

"(a) Information of a personal nature where the public disclosure of the information would constitute a

---

[1] Overspecificity in the statute might enable public bodies to use the doctrine of *expressio unius est exclusio alterius* in order to avoid disclosure of information not specified expressly in the statute.

clearly unwarranted invasion of an individual's privacy." MCL 15.243(1)(a); MSA 4.1801(13)(1)(a).[2]

The trial court, adopting the balancing test developed by the Federal courts in their interpretation of the corresponding privacy provision of the Federal Freedom of Information Act, rejected this argument. We agree with the trial court and affirm.

In light of the absence of Michigan case law interpreting the quoted exemption, the trial court correctly turned to Federal decisions intepreting the similar provision found in the Federal act. 5 USC 552(b)(6) (hereinafter referred to as Exemption 6). *Citizens for Better Care v Dep't of Public Health,* 51 Mich App 454; 215 NW2d 576 (1974), *lv den* 392 Mich 758 (1974), *International Business Machines Corp v Dep't of Treasury,* 71 Mich App 526; 248 NW2d 605 (1976).

Under Exemption 6, Federal agencies are not obligated to disclose to the public "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy". It is this provision which most clearly parallels the Michigan statutory exemption.[3]

Federal courts have uniformly followed a policy of narrowly construing the exemptions in the Federal act. *Rural Housing Alliance v United States*

[2] We do not deal separately with the constitutionally based arguments of those challenging the lower court's ruling. Our discussion of the right to privacy under the statutory exemption from disclosure satisfactorily disposes of constitutional challenges. Review of the parties' briefs reveals that they do not raise any constitutional arguments which are independent of the FOIA statutory argument.

[3] It should also be noted that the Michigan statute includes a separate provision exempting from the disclosure requirement "medical, counseling, or psychological facts or evaluations concerning an individual" if disclosure would reveal the individual's identity. MCL 15.243(1)(m); MSA 4.1801(13)(1)(m).

*Dep't of Agriculture,* 162 US App DC 122; 498 F2d 73 (1974), *Cox v United States Dep't of Justice,* 576 F2d 1302 (CA 8, 1978). As is the situation in Michigan, the government agency bears the burden of establishing that denial of a request for disclosure is statutorily supported, MCL 15.240(1); MSA 4.1801(10)(1). 5 USC 552(a)(4)(B). Claimed exemptions must be supported by substantial justification and explanation, not merely by conclusory assertions. *Gates v Schlesinger,* 366 F Supp 797, 800 (DDC, 1973).

In interpreting Exemption 6, the Federal courts have generally adopted a test which balances the preservation of the public's right to government information against the protection of the individual's private affairs from unnecessary public scrutiny. *Dep't of the Air Force v Rose,* 425 US 352; 96 S Ct 1592; 48 L Ed 2d 11 (1976). The exemption applies only to "clearly unwarranted" invasions of personal privacy. The inclusion of this qualification was a "considered and significant determination". 425 US 378, fn 16. Contrast the wording of Exemption 7 of the Federal act. 5 USC 552(b)(7). *Congressional News Syndicate v United States Dep't of Justice,* 438 F Supp 538 (DDC, 1977).

The Federal balancing test requires an initial determination of whether disclosure would constitute an invasion of privacy and, if so, how serious an invasion. Determination as to whether an invasion of privacy is "clearly unwarranted" requires consideration of the public purpose of the party requesting the information, the possibility that the purpose could be accomplished without disclosure, the scope of the request and the availability of alternative sources for obtaining the information. *Getman v National Labor Relations Board,* 146 US App DC 209, 213-216; 450 F2d 670 (1971). Also see

*Wine Hobby USA, Inc v United States Internal Revenue Service,* 502 F2d 133 (CA 3, 1974).

In narrowly construing Exemption 6, the Federal courts have repeatedly emphasized the congressional intent to limit nondisclosure to "intimate details" of a "highly personal" nature. *Getman v NLRB, supra,* at 214, *Rural Housing Alliance v USDA, supra,* at 124, *Fonda v Central Intelligence Agency,* 434 F Supp 498 (DDC, 1977), *Ferry v Central Intelligence Agency,* 458 F Supp 664 (SD NY, 1978), *Robles v Environmental Protection Agency,* 484 F2d 843 (CA 4, 1973). Exemption 6 has been interpreted to protect individuals from embarrassing disclosures. *Rural Housing Alliance v USDA, supra,* at 124, *Metropolitan Life Ins Co v Usery,* 426 F Supp 150, 168 (DDC, 1976). Identified as possibly coming within the protection of Exemption 6 has been information concerning marital status, legitimacy of children, identity of children's fathers, medical condition, welfare status, alcohol consumption, family fights, reputation, personal job preferences and goals, job evaluations, job promotion prospects, reasons for employment termination. *Rural Housing Alliance v USDA, supra,* at 124, *Metropolitan Life Ins Co v Usery, supra,* at 168, *Ditlow v Schultz,* 170 US App DC 352, 356; 517 F2d 166 (1975).[4]

---

[4] In *Baker v Central Intelligence Agency,* 188 US App DC 401; 580 F2d 664 (1978), it was held that documents revealing, among other things, the salaries of CIA personnel were not disclosable under the Federal FOIA. In that case, however, the CIA did not rely on, and the court did not discuss, the privacy exemption. Rather, nondisclosure was based on the exemption for matters "specifically exempted from disclosure by statute". 5 USC 552(b)(3). See 50 USC 403g.

Although the court in *Campbell v United States Civil Service Comm,* 539 F2d 58, 62 (1976), stated that an individual's salary is "personal and capable of causing embarrassment", it was not held that disclosure of salary information alone would constitute a clearly unwarranted invasion of personal privacy. At issue was disclosure of personnel records which listed employees who had been erroneously classified and the name of an employee who had been promoted

In a recent case the Washington Supreme Court was asked to interpret a privacy exemption in Washington's FOIA. *Hearst Corp v Hoppe,* 90 Wash 2d 123; 580 P2d 246 (1978). The particular exemption deals with information required of a taxpayer if disclosure would constitute a violation of the taxpayer's right to privacy. As is the case with the Michigan and Federal statutes, the Washington statute does not define the right to privacy. The Washington court turned to the common-law tort concept of the right to privacy and adopted the following Restatement definition and analysis in determining if disclosure of the requested information would violate the privacy provision:

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

"(a) would be highly offensive to a reasonable person, and

"(b) is not of legitimate concern to the public." Restatement Torts (2d), § 652D, at 383 (1977).

"Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest." *Id.,* at 386.

---

contrary to the applicable regulations. The case, therefore, offers little guidance to this Court in deciding the issue before us here.

The Washington court found no Federal cases adopting the Restatement definition of the right of privacy for FOIA purposes but, after reviewing Federal cases which have interpreted Exemption 6, concluded that the Federal standard (*i.e.,* the balancing test with its "tilt" toward disclosure) reflects the same considerations expressed in the Restatement.

In Michigan, judicial interpretation of the FOIA's privacy exemption, in addition to being guided by the reasoning of the Federal and state decisions interpreting similar provisions, must reflect Michigan's longstanding policy of citizen accessibility to public records. *Burton v Tuite,* 78 Mich 363, 374; 44 NW 282 (1889), *Nowack v Auditor General,* 243 Mich 200, 203-204; 219 NW 749 (1928).

In 1973, before adoption of Michigan's FOIA, the Michigan Attorney General was asked "whether any unit of government may withhold information of government salaries paid out of public money" and "whether the board of control of a university may withhold from the public information relative to personnel salaries". OAG 1973-1974, No 4794, p 70 (August 7, 1973). The Attorney General rejected the notion that, with regard to the withholding of this information, the boards of control of state universities may be held to a different standard of accountability than other government units. Recognizing that, in some limited instances, the public interest may require confidentiality, the Attorney General concluded that the records of the names and compensation of employees of state universities are subject to public examination, inspection and copying for any lawful purpose. We think the Attorney General's opinion is well-reasoned and correct.

The names and salaries of the employees of defendant university are not "intimate details" of a "highly personal" nature. Disclosure of this information would not thwart the apparent purpose of the exemption to protect against the highly offensive public scrutiny of totally private personal details. The precise manner of expenditure of public funds is simply not a private fact. The heavy burden of justifying nondisclosure has not been met by the conclusory allegations of "ill will, hard feelings, * * * prejudice among employees" and "chill[ing of] the applications of further persons for positions similar to" those of intervening defendants. Nor is there any support for the allegations of amicus curiae Oakland University that disclosure of the compensation of individual employees "would cause significant indignity, embarrassment, and humiliation and would disrupt existing relationships".[5]

While we are not persuaded that salary information about individual public employees is "private" information for FOIA purposes, even assuming that disclosure would constitute an invasion of personal privacy, that invasion would not be "clearly unwarranted". The minor invasion occasioned by disclosure of information which a university employee might hitherto have considered private is outweighed by the public's right to know precisely how its tax dollars are spent.[6]

---

[5] Substantial reliance has been placed by those challenging the lower court's ruling on *Advisory Opinion on Constitutionality of 1975 PA 227 (Questions 2-10)*, 396 Mich 465; 242 NW2d 3 (1976). In that case the Supreme Court discussed the constitutionality of Michigan's political reform act, MCL 169.1 *et seq.*; MSA 4.1701(1) *et seq.* The act required the filing of certain financial information by potential candidates for public office. It did not discuss disclosure to the public of information concerning the salaries of individual public employees. We see no analogy between the instant case and the circumstances peculiar to political activity.

[6] Const 1963, art 9, § 23 reflects the primacy of the public's right to

This important public purpose can best be accomplished only by disclosure of information such as that sought by plaintiffs. There has been no suggestion that disclosure would unduly burden defendant university.

The express purpose of the FOIA is to provide for public access to full and complete information regarding the affairs of the government so that citizens may participate fully in the democratic process.

"Undoubtedly, it would be a great surprise to the citizens and taxpayers of Michigan to learn that the law denied them access to their own books for the purpose of seeing how their money was being expended and how their business was being conducted." *Nowack v Auditor General, supra,* at 204.

We hold that defendant Michigan Technological University erred in refusing disclosure of the names and salaries of its individual employees. Because no statutory provision clearly exempted this information from disclosure, the refusal was in violation of the FOIA. The trial court's order of disclosure is, therefore, affirmed.[7]

know how its tax money is spent: "All financial records, accounting, audit reports and other reports of public moneys shall be public records and open to inspection."

We need not decide if the information requested by the instant plaintiffs constitutes "financial records". See *Grayson v Board of Accountancy,* 27 Mich App 26, 33-34; 183 NW2d 424 (1970).

[7] Subsequent to our decision in this case but prior to the release date of this opinion, the Legislature enacted 1979 PA 130, effective October 26, 1979, which amended the FOIA by adding § 13a, MCL 15.243a; MSA 4.1801(13)(a). The new section reads as follows:

"Notwithstanding section 13, an institution of higher education established under section 5, 6, or 7 of article 8 of the state constitution of 1963; a school district as defined in section 6 of Act No. 451 of the Public Acts of 1976, being section 380.6 of the Michigan Compiled Laws; an intermediate school district as defined in section 4 of Act No. 451 of the Public Acts of 1976, being section 380.4 of the Michigan Compiled Laws; or a community college established under

In its January 20, 1978, order, the trial court entered judgment for plaintiffs and issued a writ of mandamus directing defendant university to provide plaintiffs with the names and salaries or wages of each of the university's employees since 1970. The order concluded, "No costs or attorney fees shall be awarded, a public question being involved." Plaintiffs' motion for reconsideration and modification of judgment, seeking an award of attorneys' fees, costs and disbursements, was denied.

With regard to attorneys' fees, costs and disbursements, the FOIA provides:

"(4) If a person asserting the right to inspect or to receive a copy of a public record or a portion thereof prevails in an action commenced pursuant to this section, the court shall award reasonable attorneys' fees, costs, and disbursements. If the person prevails in part, the court may in its discretion award reasonable attorneys' fees, costs, and disbursements or an appropriate portion thereof. The award shall be assessed against the public body liable for damages under subsection (5)." MCL 15.240(4); MSA 4.1801(10)(4).

The denial of attorneys' fees, costs and disbursements to plaintiffs was erroneous. In all cases brought under the FOIA a public question will necessarily be involved since the public's right of access to public records will be at stake. The Legislature has enacted a statutory exception to the public question/no costs rule. The trial court

Act No. 331 of the Public Acts of 1966, as amended, being sections 389.1 to 389.195 of the Michigan Compiled Laws shall upon request make available to the public the salary records of an employee or other official of the institution of higher education, school district, intermediate school district, or community college."

In our view the amendatory section, which is in accord with our holding, represents a clarification of, rather than a substantive change in, prior law.

entered judgment for plaintiffs and was, therefore, obligated to make the requested award. That the court rejected plaintiffs' common-law theory did not transform plaintiffs' victory into a partial one. Plaintiffs were granted their requested relief. Because they prevailed in their challenge to the university's denial of their request, they were statutorily entitled to an award of reasonable attorneys' fees, costs and disbursements.

Judgment for plaintiffs is affirmed. This cause is remanded for the limited purpose of a determination of plaintiffs' reasonable attorneys' fees, costs and disbursements. An award shall be made to plaintiffs pursuant to that determination.

We do not retain jurisdiction.