CASHEL v REGENTS OF THE UNIVERSITY OF MICHIGAN

Docket No. 75507. Submitted December 5, 1984, at Grand Rapids.— Decided February 14, 1985.

Marcia Cashel brought an action against the Regents of the University of Michigan and others in the Washtenaw Circuit Court to require disclosure under the Freedom of Information Act of certain records of grants and contracts involving the university's Institute of Social Research. Plaintiff wanted to examine the records, which were on microfilm and microfiche, and take notes. She did not request copies of the records. Defendants wanted to charge a fee to cover the cost of having an employee present with plaintiff during her examination to protect the records. Plaintiff estimated she would need two or three months to inspect all the records she wanted. The court, Patrick J. Conlin, J., entered a judgment, granting plaintiff access to the records for inspection purposes for two weeks free of charge and ruled that she could be charged a fee for costs incurred if she wished to examine them for a longer period. Plaintiff appealed. *Held:*

The Freedom of Information Act requires that a public body furnish a reasonable opportunity for inspection and examination of its public records and reasonable facilities for making memoranda or abstracts from its public records during the usual business hours, and it authorizes the promulgation of reasonable rules necessary to prevent excessive and unreasonable interference with the discharge of a public body's function. A court may properly limit a plaintiff's right to free use of a public body's equipment, personnel and office space for the purpose of inspecting the public body's records to a reasonable length of time.

Affirmed in part and remanded for consideration of other issues not decided by the trial court.

1. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION ACT — FEES.

A public body may charge a fee authorized by the Freedom of Information Act only where the requester asks for a copy of a document (MCL 15.234; MSA 4.1801[4]).

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 66 Am Jur 2d, Records and Recording Laws §§ 13, 14, 32.

2. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION ACT — INSPEC-
   TION OF RECORDS — FEES.

   The Freedom of Information Act requires that a public body
   furnish a reasonable opportunity for inspection and examina-
   tion of its public records and reasonable facilities for making
   memoranda or abstracts from its public records during the
   usual business hours, and it authorizes the promulgation of
   reasonable rules necessary to prevent excessive and unreason-
   able interference with the discharge of a public body's function;
   a court may properly limit a plaintiff's right to free use of a
   public body's equipment, personnel and office space for the
   purpose of inspecting the public body's records to a reasonable
   length of time (MCL 15.233[2]; MSA 4.1801[3][2]).

Marcia Cashel, *in propria persona.*

*Davis & Fajen, P.C.* (by *Peter A. Davis),* for
defendant.

Before: R. M. MAHER, P.J., and R. B. BURNS and
R. E. ROBINSON,* JJ.

PER CURIAM. Plaintiff appeals as of right from
an amended judgment granting to her under the
Freedom of Information Act, MCL 15.231 *et seq.;*
MSA 4.1801(1) *et seq.* (FOIA), disclosure of certain
records in the possession of certain of the defen-
dants (the university).

The events from which this case stem begin in
1978. Fortunately it is not necessary to detail
them in order to make our decision clear, other
than to state that they involve an effort by plain-
tiff to gain access to records of grants to and
contracts involving the university's Institute of
Social Research (ISR), in order to establish her
claim of wrongdoing by the ISR.

On June 24, 1983, the trial judge entered a
judgment which ordered the university to disclose
public records, "granting plaintiff's revised re-

_____
* Former circuit judge, sitting on the Court of Appeals by assign-
ment.

quests as stated in her letters of May 5, 1982, and June 3, 1983, to William L. Cash, Jr., a defendant, except for any other financial entity".

Plaintiff's requests in her May 5, 1982, letter are these:

"1. Said plaintiff, pursuant to the Michigan Freedom of Information Act, requests legible true copies of all active grants, contracts, subgrants, subcontracts, subprojects, and any other active financial entity received or given by the Institute for Social Research of The University of Michigan for the period of January 1, 1970 up to the time the court grants plaintiff's request and the records are delivered to her. Said plaintiff also requests legible true copies of all last bank statements of the account of the above requested financial entities and legible true copies of all cancelled and voided checks (fronts only) of said requested financial entities, for example, all cancelled and voided checks of all grants, subgrants, etc.

"2. Plaintiff requests that said requested records be sorted, for example, a contract with its cancelled and voided checks in numerical order and its last bank statement, be attached to its individual subs (each with its cancelled and voided checks in numercial order and last bank statement); and the grants and contracts be in chronological order, for example, the active 1970 grants and contracts first."

Her letter request of June 3, 1983, is in the following form:

"My request for University records, pursuant to the Michigan Freedom of Information Act in letter of May 1982, remains the same except that I request that a legible copy of the requisition of each expenditure (check) be attached to each requested cancelled check."

On August 4, 1983, by letter to William L. Cash, Jr., plaintiff again revised her request for records. This request consisted of the following:

"1. all active[1] grants, their requisitions, their cancelled checks, and their last bank statements;

"a. and said active grants' subprojects, their requisitions, their cancelled checks, and their last bank statements,

"b. and said active grants' subgrants[2] (also called subcontracts);[3]

"2. all active contracts, their requisitions, their cancelled checks, and their last bank statements;

"a. and said active contracts' subprojects,[4] their requisitions, their cancelled checks, and their last bank statements,

"b. and said active contracts' subcontracts."

---

"[1] The word, active, refers to grants and contracts that still have a balance on which checks can be written; hence, records requested beginning January 1, 1970 could include records dated in the 1960's if their accounts were still open on or after January 1, 1970. One condition of most grants is that the money be used up in one, two or three years, more or less.

"[2] The word, subgrant, is a subcontract of a grant that goes outside the University of Michigan. The words, subgrant and subcontract, may be used synonymously.

"[3] The word, subcontract, is a sub of a contract (or grant) that goes outside of the University of Michigan.

"[4] The word, subproject, is a subcontract of a contract or a grant that stays within the University of Michigan for which an account may be set up for requisitions and checks to be written on."

---

In this letter, plaintiff stated that she did not want to purchase copies of the records, only to examine them and make notes. The University responded that the only such records had been reduced to microfilm and that it could not permit plaintiff to view them without a university representative being present to protect the records.

On August 11, 1983, plaintiff filed a "revised supplement to amended complaint" setting forth by reference to the foregoing letters the above revised requests. At the same time she filed a motion to set aside the judgment of June 24, 1983, and moved for "judgment on amended complaint and revised supplement".

After preliminary skirmishing between the parties as to the method by which the records should be made available for plaintiff's examination, the trial judge attempted to reach a resolution of the impasse, as appears from the trial court record:

"*The Court:* Where can she view [the microfilmed records]?

"*Mr. Davis:* The ISR will provide facilities for her.

"*The Court:* All right. You will provide facilities for her to review these records?

"*Mr. Davis:* Yes, but she can't do it out of the presence of an ISR person because they're the original documents. That's the problem.

"*The Court:* That's fine. I have no problem with that.

"*Mr. Davis:* Fine.

"*The Court:* She can do it at ISR and she can—there must be someone there when you do that.

"*Ms. Cashel:* All right. Thank you. Do you think we need an order?

"*The Court:* No. No, you don't, but somehow or other she's got to see these records, and I guess at this point I don't really care if it's going to take a person who sits with her and holds her hand or whatever.

"*Ms. Cashel:* No. I object to that, your Honor.

"*The Court:* It doesn't make any difference whether— well, I can understand that.

"*Mr. Davis:* Except that if that results in unreasonably high costs to the Institute under the Statute—

\* \* \*

"*Ms. Cashel:* Your Honor, there is no fee for reading and taking notes. You know that as well as I do.

"*The Court:* Let her do it. If it takes two people, let her do it. Get it over with.

\* \* \*

"*The Court:* How long would you need?

"*Ms. Cashel:* I might need two or three months, your Honor.

"*The Court:* Oh, absolutely—you'll have to pay for it, then. I couldn't demand that the University have a

person there that you *[sic]* have to pay for. That would be an unusual cost. I will give you two weeks. Two weeks.

"You see, I can't order the University to have two employees at your beck and call for such a long period of time. I'm willing to order—

*"Ms. Cashel:* * * * That means I would have to probably make another Freedom of Information request, if you put a time limit on it.

*"The Court:* Well, all I can say is—no, I'm not putting any limit on it. I'm just saying—

*"Ms. Cashel:* Yes, but you're telling me I have to be finished in two weeks.

*"The Court:* No, I'm not. I'm saying that they have to provide you with a person or persons, however many it takes, for a period of two weeks for eight hours a day. I'm ordering that somebody show you these records on microfilm. I'm not going to give you the original records.

"In other words, I couldn't be responsible for a record —a whole history of something that happened at the University being lost."

On December 14, 1983, the trial court signed an amended judgment which authorized the presence of an ISR representative while plaintiff viewed the requested records at the Institute for Social Research and at the purchasing office of the university. It also provided that if plaintiff viewed the records for longer than two weeks of eight-hour days at those locations she was to be assessed costs for labor.

Plaintiff first challenges the court's authority to charge her labor costs if her examination exceeds two weeks. She points out, correctly, that the FOIA contains no requirement for the charging of a fee to view records unless the viewer requests a copy. MCL 15.234; MSA 4.1801(4).

This being a case of first impression in Michigan (or elsewhere so far as we can determine) it may

help to review the purpose of the FOIA as set forth in its preamble:

"It is the public policy of this state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with the act. The people shall be informed so that they may fully participate in the democratic process." MCL 15.231(2); MSA 4.1801(1)(2).

FOIA confers upon the public the dual rights to *inspect* nonexempt public records and to obtain *copies* of such records.

"Sec. 3. (1) Upon an oral or written request which describes the public record sufficiently to enable the public body to find the public record, a person has a right to inspect, copy, or receive copies of a public record of a public body, except as otherwise expressly provided by section 13. A person has a right to subscribe to future issuance of public records which are created, issued, or disseminated on a regular basis. A subscription shall be valid for up to 6 months, at the request of the subscriber, and shall be renewable." MCL 15.233(1); MSA 4.1801(3)(1).

Likewise, the statute provides safeguards so as not to overburden the public body. Section 3 of the FOIA, quoted above, conditions a requester's right to access upon receipt of a sufficient description of the document sought. MCL 15.233(2); MSA 4.1801(3)(2) provides:

"(2) A public body shall furnish a requesting person a reasonable opportunity for inspection and examination of its public records, and shall furnish reasonable facilities for making memoranda or abstracts from its public records during the usual business hours. A public body may make reasonable rules necessary to protect its

public records and to prevent excessive and unreasonable interference with the discharge of its functions."

MCL 15.234; MSA 4.1801(4), upon which plaintiff relies, states in pertinent part:

"Sec. 4. (1) A public body may charge a fee for providing a copy of a public record. Subject to subsection (3), the fee shall be limited to actual mailing costs, and to the actual incremental cost of duplication or publication including labor, the cost of search, examination, review, and the deletion and separation of exempt from nonexempt information as provided in section 14."

"(3) * * * A fee shall not be charged for the cost of search, examination, review, and the deletion and separation of exempt from nonexempt information as provided in section 14 unless failure to charge a fee would result in unreasonably high costs to the public body because of the nature of the request in the particular instance, and the public body specifically identifies the nature of these unreasonably high costs. A public body shall establish and publish procedures, and guidelines to implement this subsection."

While there is no case law on the question, the Attorney General has ruled that the provisions of the above section, including the authorization to charge an appropriate fee, apply only if the requester asks for a copy of the requested document, and we agree. OAG 1979-1980, No. 5,500, p 255 (July 23, 1979). Thus, authority for the imposition of labor costs after a two-week period, as the trial court ordered in the present case, must be found elsewhere in FOIA.

Plaintiff contends that, since she wishes to inspect defendants' records rather than purchase copies, the trial court erred in entering an amended judgment which assesses her labor costs at the end of the two-week period.

It seems apparent that the drafters of FOIA did

not contemplate a situation such as the present one, where a requester wishes to systematically examine, rather than copy, extremely large quantities of government records. The right to inspect created by FOIA seems to envision a brief perusal of certain files, followed by a request for copies of specific records found during this search. We do not believe that FOIA was enacted to allow private attorneys general, such as plaintiff, the right to conduct a full-scale audit of public body activity; the purpose of the act is to make information available to promote an informed citizenry. Plaintiff has estimated that it would take her several months of full-time work to review the information she requested. We believe that the trial court's approach to plaintiff's request is more in line with the policy behind FOIA. Eighty hours of unlimited access to the records sought by plaintiff should allow her ample opportunity to uncover sufficient evidence of the wrongdoing she suspects to present to state and federal authorities for further investigation. While FOIA confers upon plaintiff a right to be informed, it does not follow that it grants her the right to open discovery and prosecution. Investigation by agencies funding the ISR is a more appropriate mechanism to undertake the broad review plaintiff seeks.

While promoting disclosure, FOIA does not require agencies to accede to overly burdensome information requests. The requirement of the act is one of reasonableness. Under its terms, a public body must furnish "a reasonable opportunity for inspection and examination of its public records" and "reasonable facilities for making memoranda or abstracts from its public records during the usual business hours". It authorizes the promulgation of "reasonable rules" necessary "to prevent excessive and unreasonable interference with the

discharge of [a public body's] function". MCL 15.233(2); MSA 4.1801(3)(2). In our opinion, the amended judgment in the present case satisfies this mandate. The two weeks allotted plaintiff at no charge seems a reasonable opportunity to examine the university's records. The amended judgment, while not an agency rule, clearly was designed to prevent undue interference with the day-to-day operations of the university. Limiting plaintiff's use of the university's viewing and copying equipment, personnel, and office space for two weeks free of charge was not an abuse of discretion by the trial court.

Nor, in our opinion, does the provision of the amended judgment authorizing the university to have an ISR staff member on hand during plaintiff's use of the university's records amount to an abuse of discretion. The records plaintiff requested were on microfilm, the only remaining copies of original records. "A public body may make reasonable rules necessary to protect its public records * * *." MCL 15.233(2); MSA 4.1801(3)(2). Again, while not a rule promulgated by the public body, the trial judge's amended judgment falls squarely within the statute. The university could not be reasonably expected to turn over its only existing copies of its records for plaintiff's inspection without the presence of a staff member to assure their proper use and safe return.

Plaintiff next contends that the university's conduct since the entry of the amended judgment has impeded her right to inspect the records she requested. The university contends that plaintiff should be barred from obtaining further disclosure because no public purpose would be served and because plaintiff may harass individuals whose names and addresses she uncovers during her investigation, thus triggering the FOIA's privacy

exception. Since both positions focus on post-judgment conduct of the parties and are not matters of record, they are not properly before this Court. The parties' remedies are in the lower court.

Plaintiff's final claim of merit asks this Court to award her attorney fees, costs, disbursements and punitive damages. Although her amended complaint sought such relief, the judgment did not address her request. Therefore, the question is not properly before us.

The trial court is affirmed except as to the last issue, and this matter is remanded to the trial court to determine if plaintiff is entitled to attorney fees, costs, disbursements and punitive damages. See *Penokie v Michigan Technological University,* 93 Mich App 650, 666; 287 NW2d 304 (1979).

No costs will be allowed in this Court, a public question being involved.