PAYNE v GRAND RAPIDS POLICE CHIEF

Docket No. 105758. Submitted December 14, 1988, at Grand Rapids.
Decided July 6, 1989.

Cheri Ann Winowiecki, daughter of Gregory and Connie Payne,
died of carbon monoxide poisoning at approximately 5:00 A.M.
on May 26, 1986. The death was initially ruled a suicide and
was later determined to have been accidental. Fearing foul play
and suspecting that the decedent may have called the Grand
Rapids Police Department at its emergency telephone number,
the Paynes made a request under the Freedom of Information
Act to be allowed to listen to the tape recording of calls
through the emergency number between midnight and 5:00
A.M. on May 26, 1986. The police department offered the
Paynes an edited transcript of the calls. The callers' names,
telephone numbers and addresses and any other information
indicating the callers' identities and addresses were deleted
from the transcript. The Paynes rejected the offer and instead
requested that a friend of theirs, who was a Michigan State
Police officer and was familiar with the decedent's voice, be
allowed to listen to the tape recordings. When the police
department refused this request, the Paynes brought an action
in the Kent Circuit Court against the Grand Rapids Police
Chief and the Grand Rapids Police Department. Plaintiffs
requested that their friend be appointed as a master and that
he be allowed to listen to the recordings. The trial court,
Robert A. Benson, J., denied the request and granted summary
disposition in favor of defendants, ruling that the callers'
names and addresses were exempt from disclosure under the
FOIA and that the only practical way of meeting plaintiffs'
disclosure request was through the edited transcripts of the
recordings. Plaintiffs appealed.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Records and Recording Laws §§ 46.14-46.19.

Power of court under 5 USCS 552(a)(4)(B) to examine agency
records in camera to determine propriety of withholding records.
60 ALR Fed 416.

Construction and application of Freedom of Information Act provi-
sion (5 USCS 552(a)(4)(E)) concerning award of attorney fees and
other litigation costs. 36 ALR Fed 530.

1. Under § 13(1)(b)(i) of the FOIA, a public body may exempt from disclosure as a public record investigating records compiled for law enforcement purposes, but only to the extent that disclosure would interfere with law enforcement proceedings. However, the agency denying disclosure of such a record must demonstrate how disclosure would amount to interference on the basis of facts and not merely conclusory statements which recite the language of the act. In this case, summary disposition should not have been granted since defendants failed to provide reasons for nondisclosure which are based on fact and not merely statements of opinion as to why disclosure would interfere with law enforcement.

2. In determining whether a claimed exemption from disclosure under the FOIA applies, a trial court should review the complete particularized justification received from the public body, but where the public body is reluctant to particularize or is antagonistic, the court, or the court with the aid of a master, should conduct a review of the disputed materials de novo, in camera, to determine whether complete particularized justification of nondisclosure exists, or should allow counsel for the party seeking disclosure to have access to the disputed materials in camera under a special agreement. Here, the appointment of a master to review the recordings would have provided a fair and reasonable resolution of this case. On remand, the trial court shall appoint a master and may properly place restrictions on the manner in which the master reviews the recordings or uses the information obtained therefrom.

3. Plaintiffs, as the prevailing party in this case, are entitled under the FOIA to reasonable attorney fees, costs and disbursements that have been incurred and will be incurred on remand.

Reversed and remanded.

1. RECORDS — FREEDOM OF INFORMATION ACT — EXEMPTIONS — LAW ENFORCEMENT INVESTIGATIONS.

A record of a law enforcement investigation may be exempt from disclosure under the Freedom of Information Act where disclosure would interfere with law enforcement proceedings; however, the agency denying disclosure must demonstrate how disclosure of particular records or kinds of records would amount to interference on the basis of facts and not merely conclusory statements which recite the language of the act (MCL 15.243[1][b][i]; MSA 4.1801[13][1][b][i]).

2. RECORDS — FREEDOM OF INFORMATION ACT — EXEMPTIONS — JUDICIAL REVIEW.

A trial court, in an action brought under the Freedom of Infor-

mation Act, should follow a three-step procedure in analyzing denials of disclosure of public records in order to secure disclosure of all pertinent information which is not exempt; normally, the court should review the complete particularized justification for the denial received from the public body, but where the public body is reluctant to particularize or is antagonistic, the court, or the court with the aid of a master, should conduct a review of the disputed materials de novo, in camera, to determine whether complete particularized justification of nondisclosure exists, or should allow counsel for the party seeking disclosure to have access to the materials in camera under a special agreement where necessary for clarification of the dispute.

3. RECORDS — FREEDOM OF INFORMATION ACT — ATTORNEY FEES.
  A party that prevails in an action brought under the Freedom of Information Act is entitled to reasonable attorney fees, costs and disbursements that have been incurred and, where a remand to the trial court is ordered on appeal, to such sums that will be incurred on remand (MCL 15.240[4]; MSA 4.1801[10][4]).

*Steven J. Vander Ark,* for plaintiffs.

*Daniel A. Ophoff,* for defendants.

Before: MAHER, P.J., and HOLBROOK, JR. and R. E. NOBLE,* JJ.

PER CURIAM. Plaintiffs appeal as of right from an order granting summary disposition to defendants upholding their denial of a request brought by plaintiffs under the Michigan Freedom of Information Act, MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.,* to review a tape recording of emergency calls made to the Grand Rapids Police Department.

In its opinion, the lower court aptly summarized the pertinent facts as follows.

This is a complaint brought by the plaintiffs against the Grand Rapids Chief of Police and the police department under the provisions of the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Freedom of Information Act. On or about May 26, 1986, at approximately 5:00 A.M., the plaintiffs' daughter, Cheri Ann Winowiecki, died of carbon monoxide poisoning under circumstances originally ruled a suicide and later determined to have been accidental. It is alleged in the complaint that the exact circumstances of the death are, as of yet, undetermined. For the purposes of this motion, it is sufficient to say that the police department is convinced that the death was suicide and the parents suspect foul play. The plaintiffs requested the right to listen to all emergency calls received by the Grand Rapids Police Department between the hours of 12:00 midnight and 5:00 A.M. on May 26, 1986. This request was made under § 5 of the FOIA, MCL 15.235; MSA 4.1801(5). On May 5, 1987, William G. Hegarty, Chief of Police, wrote a final determination letter to Mr. Steven J. Vander Ark, the attorney for the plaintiffs, denying their request for unedited copies of the incoming call tapes, and also denying them an opportunity to review those tapes. The information was claimed to be exempt from disclosure pursuant to § 13 of the FOIA, MCL 15.243(1)(b)(i), (iii) and (iv); MSA 4.1801(13)(1)(b)(i), (iii) and (iv); specifically, that the disclosure requested would represent an unwarranted invasion of privacy, could interfere with law enforcement procedures, or could disclose the identity of confidential sources. After further negotiations between the attorney for the plaintiffs and the Grand Rapids City Attorney, on July 22, 1987, the City of Grand Rapids, through the city attorney, offered to make available typewritten transcripts of all the incoming telephone calls to the Grand Rapids Police Department between the hours of 12:00 midnight and 5:00 A.M., on May 26, 1986, deleting only the information which the city claimed to be exempt under the provisions of § 13

of the act, subsections (1)(b)(i), (iii) and (iv). Such a transcript was prepared deleting therefrom only the names, telephone numbers, and addresses of incoming callers and the street number of certain addresses given in the course of conversations which might allow a reader to identify the caller's location or home address.

The plaintiffs rejected this offer and offered a compromise: that the tapes would be made available for review by a Michigan State Police lieutenant who is a trained law enforcement officer and a close personal friend of the plaintiffs. The plaintiffs' contention is that their daughter, in the past, has called the emergency number, and that they feel that their daughter may have called the police sometime during the hours indicated asking for help, which call was either missed or ignored. Plaintiffs further claim that the Michigan State Police lieutenant (their friend) is able to recognize their daughter's voice and might pick up a call which was otherwise missed by a transcriber. They further claim that he is skilled or trained, and would be able to tell if the tape has been edited or deleted in any way.

On July 31, 1987, the trial court initially ruled that it would appoint a master to listen to the tapes as requested by plaintiffs. However, it appears that a master was never appointed. Apparently, the trial court reconsidered its ruling and on November 23, 1987, issued an opinion granting summary disposition in favor of defendants. The trial court held that disclosure of names and addresses on the tapes would interfere with law enforcement proceedings and the names and addresses were therefore exempt under § 13(1)(b)(i) of the FOIA. The court determined that the only practical way to meet plaintiffs' request was to furnish transcripts of the tapes from which names,

addresses, and telephone numbers of the callers were deleted.

On appeal, plaintiffs claim that the trial court erred in holding that defendants met their statutory burden of proof in withholding the requested tapes under the claimed exemptions. The exemption relied on by the trial court in denying plaintiffs' request reads as follows:

A public body may exempt from disclosure as a public record under this act:

\* \* \*

(b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:

(i) *Interfere with law enforcement proceedings.* [Emphasis added. MCL 15.243(1)(b)(i); MSA 4.1801(13) (1)(b)(i).]

In *The Evening News Ass'n v City of Troy,* 417 Mich 481, 503; 339 NW2d 421 (1983), our Supreme Court set forth the following rules which should be used in analyzing a claim of exemption from disclosure under the FOIA:

1. The burden of proof is on the party claiming exemption from disclosure. MCL 15.240(1); MSA 4.1801(10)(1).

2. Exemptions must be interpreted narrowly. *Vaughn v Rosen,* 157 US App DC 340, 343; 484 F2d 820 (1973).

3. "[T]he public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying." MCL 15.244(1); MSA 4.1801(14)(1); *Vaughn v Rosen,* 157 US App DC 345.

4. "[D]etailed affidavits describing the matters withheld" must be supplied by the agency. *Ray v*

*Turner,* 190 US App DC 290, 317; 587 F2d 1187 (1978).

5. Justification of exemption must be more than "conclusory," i.e., simple repetition of statutory language. A bill of particulars is in order. Justification must indicate factually how a particular document, or category of documents, interferes with law enforcement proceedings. *Campbell v Dep't of Health & Human Services,* 221 US App DC 1, 4-6, 10-11; 682 F2d 256 (1982); *Vaughn v Rosen,* 157 US App DC 347.

6. The mere showing of a direct relationship between records sought and an investigation is inadequate. *Campbell v Dep't of Health & Human Services,* 221 US App DC 8-9.

Defendants argue that sufficient justification for denial of plaintiffs' request was provided in Grand Rapids Police Chief Hegarty's affidavit. Chief Hegarty's affidavit states, in relevant part:

4. That affiant *routinely* promises confidentiality to persons and groups he meets and speaks to regarding the use of Grand Rapids Police Department emergency telephone lines.[1]

5. That *affiant believes* the effectiveness of the 911 emergency line service and the Grand Rapids Police Department will be substantially impaired if affiant's promises of confidentiality are breached.

6. That *affiant believes* individuals will not report crimes or request police assistance if public disclosure of their names, addresses and telephone numbers is made.

7. That *affiant believes* the tape recordings of incoming emergency telephone calls *sometimes contain* confidential sources of information generated for law enforcement purposes.

8. That *affiant believes* many of the callers to the Grand Rapids Department emergency line

---

[1] We question the wisdom of making carte blanche promises of confidentiality which may prove to be without legal force.

disclose matters which are of a highly personal or embarrassing nature. [Emphasis added.]

In reviewing the affidavit, we find that the statements are at best conclusory statements of opinion, not of factually based reasons, the type which were deemed to be improper in *Evening News, supra,* pp 506-507. The above statements, together with evidence presented at the hearing on the summary disposition motion, do not satisfy statutory requirements to sustain defendants' burden for exemption from disclosure. *Evening News, supra,* pp 497, 506-507.

We also find that the circuit court failed to find with sufficient particularity that defendants had specifically justified their claimed exemption.

In its opinion, the circuit court stated:

It doesn't take a genius to figure out that [publication of names and addresses] *might have a chilling effect* on citizens who have legitimate complaints or concerns which should be communicated to the police department. The person complaining about a possible criminal violation on the part of a neighbor *may very well be deterred* from calling if *he or she is* aware that the neighbor, under the Freedom of Information Act, *might be able to identify* the caller and seek retribution.

* * *

The Court feels that the "interference with police proceedings" can prevent *a disclosure which may deter* the public's use of the emergency lines to report potential crimes. There is a real reluctance on the part of people to call police and report crimes or to become involved if they feel they are somehow actually going to be involved. This reluctance *could be greatly increased* if they were subject to the realization that their names and addresses *could be* published for any persons who asked for them under the Freedom of Information Act. [Emphasis added.]

As the Court in *Evening News* stated, "the statute is positive." 417 Mich 506. It was the court's duty to find that the particular information plaintiffs wanted *"would . . .* interfere with law enforcement proceedings," not that it *"could"* interfere with or jeopardize law enforcement. *Id.* (Emphasis added.) The circuit court's opinion in the present case is tentative and speculative; therefore, the court has not made the required findings. *Evening News, supra,* pp 506-508. Moreover, the court's statement that revelation of the names "might have a chilling effect" is entirely conclusory, and therefore improper, under *Evening News, supra,* p 507. Cf. *Haskins v Oronoko Twp Supervisor,* 172 Mich App 73, 76; 431 NW2d 210 (1988).

We therefore find that the trial court erred in its determination that defendants had met their statutory burden to sustain their claim of exemption where it was only alleged that disclosure could interfere with law enforcement proceedings or might have a chilling effect.

Plaintiffs further claim that the trial court failed to follow the three-step procedure set forth by the Supreme Court in *Evening News, supra,* p 516, to determine whether the requested material was exempt from disclosure:

> 1. The court should receive a complete particularized justification as set forth in the six rules above (Part IC); or
> 2. the court should conduct a hearing *in camera* based on *de novo* review to determine whether complete particularized justification pursuant to the six rules exists, *Vaughn v Rosen, supra,* pp 346-348; *Ray v Turner, supra,* p 311; or
> 3. the court can consider "allowing plaintiff's counsel to have access to the contested documents *in camera* under special agreement 'whenever pos-

sible'". *Ray v Turner, supra,* p 308, fn 24, and p 315.

Explaining this procedure, our Supreme Court said:

> The objective, of course, is to secure disclosure of all pertinent information that is not exempt. If the government and the court are mutually aware of the six rules and the government is prepared to act accordingly, the matter should normally be resolved under the first step. Where the government for whatever reason is reluctant or antagonistic, or the court is in doubt, the trial court may have to proceed to the second step. If the matter is relatively clear and not too complex, the court, or the court with a master, may, within acceptable expenditure of judicial energy, be able to resolve the matter *in camera.* However, if the matter is not clear or simple, the court may have to consider employment of plaintiff's counsel under special agreement in order to resolve the matter. [417 Mich 516.]

Because the circuit court in this case did not receive particularized justification and the defendants were obviously reluctant to comply with plaintiffs' request, the court should have proceeded to step two or three of the above procedures. It did not.

In its opinion, the trial court correctly recognized that the "public record" requested was the actual magnetic tape—not the transcript—of the incoming emergency calls. The circuit court stated that it was tempted to use the third step of the procedures by allowing plaintiffs to have access to the contested tapes in camera under a special agreement in which Michigan State Police Lieutenant Speckin would be appointed as a master. However, the court apparently reconsidered and

stated that the only practical way to furnish plaintiffs the information while separating the exempt from nonexempt material was through the preparation of transcripts.

We believe that by its failure to appoint a master in this case, the court missed an opportunity for a fair and reasonable resolution of this matter which would be in keeping with the policy of the FOIA. MCL 15.231(2); MSA 4.1801(1)(2). As Justice RYAN observed in *Kestenbaum v Michigan State University,* 414 Mich 510, 558; 327 NW2d 783 (1982),

> MCL 15.233; MSA 4.1801(3) gives a person the right to "inspect, copy, or receive copies of a *public record,"* not merely to obtain the "information" contained in a public record in any form in which the public body sees fit to release it. A paper printout is simply not a "copy" of a magnetic tape. [Emphasis in original.]

The appointment of a master at plaintiffs' expense, as opposed to the preparation of lengthy transcripts at defendants' expense, is in accord with the act's provision which directs that the most economical means available be utilized. MCL 15.234(3); MSA 4.1801(4)(3). See *Kestenbaum, supra.* See also *Mithrandir v Dep't of Corrections,* 164 Mich App 143; 416 NW2d 352 (1987), lv den 430 Mich 864 (1988). The appointment of a master also alleviates the concern that the names and addresses on the tapes would be published for any persons who asked for them. The court may properly place restrictions on the manner in which the master reviews the tapes or on the use of information obtained from the tapes. See *Residential Ratepayer Consortium v Public Service Comm No 2,* 168 Mich App 476, 482; 425 NW2d 98 (1987). Furthermore, it would be proper for the police

department to have a member of the department present while the tapes are being reviewed by the master. See *Cashel v Regents of the University of Michigan,* 141 Mich App 541, 550; 367 NW2d 841 (1985). Thus, the court can insure that a "reasonable opportunity for inspection and examination of [the] public records" is provided, while protecting the public record and preventing excessive and unreasonable interference with the police department's functions. MCL 15.233(2); MSA 4.1801(3)(2).

The grant of summary disposition to defendants is reversed and summary disposition is entered on behalf of plaintiffs. The matter is remanded to the trial court to appoint a master to review the contested tapes on behalf of plaintiffs. Since plaintiffs have prevailed in the instant action, pursuant to MCL 15.240(4); MSA 4.1801(10)(4) we direct that plaintiffs be awarded reasonable attorney fees, costs, and disbursements that have been incurred or will be incurred on remand. See *UPGWA v Dep't of State Police,* 422 Mich 432, 455, 458, 472; 373 NW2d 713 (1985), modified 423 Mich 1205 (1985).

Reversed and remanded. We do not retain jurisdiction.