INTERNATIONAL UNION, UNITED PLANT GUARD WORKERS
OF AMERICA v DEPARTMENT OF STATE POLICE

Docket Nos. 69976, 70773. Argued January 11, 1985 (Calendar No.
15).—Decided September 6, 1985. Post-judgment order 423 Mich
1205.

The International Union, United Plant Guard Workers of Amer-
ica brought an action under the Michigan Freedom of Informa-
tion Act in the Macomb Circuit Court against the Department
of State Police, seeking an injunction to compel disclosure of
the names and addresses of security guards employed by cer-
tain security guard agencies. The court, Frank E. Jeannette, J.,
granted the plaintiff's motion for summary judgment and or-
dered disclosure of the reports. The Court of Appeals, M. F.
CAVANAGH, P.J., and R. M. MAHER and GLASER, JJ., affirmed in
an opinion per curiam (Docket No. 57332). The department
appeals.

In opinions by Justice LEVIN, joined by Justice BOYLE, by
Justice RYAN, joined by Justice BOYLE, and by Justice BRICK-
LEY, the Supreme Court held that the union is entitled to
additional attorney fees.

With regard to whether the department is required to dis-
close the names and addresses of the security guards, the
decision of the Court of Appeals was affirmed by equal division.

Justice LEVIN, joined by Justice BOYLE, stated that the De-
partment of State Police is required to disclose a list of names
and addresses of security guards employed by certain security
guard agencies to the UPGWA. The release of the list by the
department would not constitute a clearly unwarranted inva-
sion of privacy under the Freedom of Information Act when

REFERENCES FOR POINTS IN HEADNOTES

[1-8] Am Jur 2d, Records and Recording Laws § 32 et seq.
   Construction and application of Freedom of Information Act provi-
      sion (5 USCS § 552(a)(4)(E)) concerning award of attorneys fees
      and other litigation costs. 36 ALR Fed 530.
[2] Payroll records of individual government employees as subject to
      disclosure to public. 100 ALR3d 699.
[4] What constitutes personal matters exempt from disclosure by
      invasion of privacy exemption under state Freedom of Informa-
      tion Act. 26 ALR4th 666.

measured against the extent and nature of the asserted invasion or when the benefits of disclosure are balanced against the intrusion upon privacy. UPGWA is also entitled to additional attorney fees.

1. The statement of policy in the Freedom of Information Act that all persons be entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees so that the public may fully participate in the democratic process cannot properly be read as words of limitation, requiring that all requests for information under the act further the act's core purpose. The act presumes that records are disclosable, and there is no exception expressly permitting withholding merely because a request would not further the core purpose. An examination of express exceptions reveals that some information obtainable through the act is more useful and likely to be used in purely private pursuits than in furthering the core purpose. The Legislature seems to have decided that the citizenry should be able to use information that the government has acquired. In addition, restricting the use of the act to its core purpose would put a premium on the ingenuity with which a requester can characterize his interest as furthering the core purpose of the act.

2. Assuming a balancing test is to be used to determine whether an invasion of privacy is "clearly unwarranted," the benefits to be weighed should not be limited to the classic public interest. The act contemplates disclosure of information that would not benefit the general public, and that would likely be used in purely private pursuits. In addition, consideration of only the classic public interest would tilt the balance against disclosure since the test would consider the privacy loss to one directly affected party, but would ignore the benefits accruing to directly affected parties while concentrating instead on the "interests" of a largely disinterested public. The benefits both to directly interested groups and to the general public should be considered. Therefore, four interests should be considered: those of the requester, those of the general public, those of parties whose benefits would exceed their losses of privacy, and those of parties whose privacy losses would exceed their benefits from receipt of the information.

3. The union has a strong proprietary interest in acquiring the requested information.

4. The classic public interest is very limited. There is no core purpose for the request. The general public purpose asserted, encouragement of collective bargaining, is not compelling. The

claimed public benefit has not been deemed, as a matter of labor law, sufficiently important to require divulgence of the requested information by employers. However, it does not follow that the information is not obtainable under the act.

5. Many potential solicitees may benefit from their contact with the union. The union, which knows more about its affairs than the Court does, would not have gone to the trouble and expense of an FOIA request unless it expected solicitees to respond favorably. Solicitees are likely to respond favorably only if they believe they will benefit.

6. There is little evidence concerning the actual effect the union's solicitations might have on the guards' privacy. The department's pledge of confidentiality must be given little weight because the act does not allow an administrative rule to defeat disclosure, there is no evidence that the guards were aware of the pledge, and the pledge could not make more personal the underlying information. Although guards may be exposed to some of the same risks as police officers, the act does not expressly protect the addresses of guards. The state, in this case, has failed to demonstrate that the requested information —the addresses of the guards—is so personal and private that it should not be disclosed.

7. Because the union prevailed substantially in this case, it is entitled under the act to reasonable attorney fees, costs, and disbursements that it has incurred or will incur. Remand is required to determine such amounts.

Justice RYAN, joined by Justice BOYLE, wrote separately to note that the only reasonably debatable point upon which resolution of the case ought to turn is whether the disclosure sought would amount to a clearly unwarranted invasion of privacy. A balancing of a significant public purpose against the privacy interests involved is not required in every case, and where reasonable minds might differ with regard to whether the information sought is personal in nature, there is a presumption in favor of disclosure. The inquiry should not center on the possible worthwhile use to which the information could be put or the damage which could conceivably result from its misuse, but upon whether the disclosure itself would amount to a clearly unwarranted invasion of privacy. The Michigan Freedom of Information Act is an expression of a legislative policy of disclosure. If revelation of the information sought would result in merely an invasion of privacy, disclosure is required. If revelation arguably would amount to an unwarranted invasion of privacy, disclosure is still required. It is only when the

privacy invasion would be clearly unwarranted that the exception provision of the act is an obstacle to revelation.

Justice RILEY, joined by Chief Justice WILLIAMS, stated that the release by the Department of State Police of lists containing the names and home addresses of persons employed by private security guard agencies to a union for collective bargaining purposes constitutes a clearly unwarranted invasion of the employees' privacy and that the lists should be exempt from disclosure.

The purpose of the Freedom of Information Act as stated in the policy section of the act entitles all persons to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees. Information of a personal nature contained in a public record may be exempted from disclosure where disclosure would amount to a clearly unwarranted invasion of a person's privacy. In determining whether a request for information gives rise to a clearly unwarranted invasion of privacy, the act's policy section must be used in defining the public interest. The more the release of the information would further the core purpose of the act, the more the scale should tip in favor of disclosure. In this case, the privacy interest when balanced with the public interest in disclosure outweighs the public interest, mandating a denial of disclosure of the requested records.

The particular purpose for which the information is sought is not the controlling focus of analysis when scrutinizing the public benefits of disclosure. The determination should also include whether the release of the desired information is consistent with the legislative intent expressed in the policy section of the act.

Justice BRICKLEY agreed that the Department of State Police may refuse under the act to relinquish the information sought by the union on the ground that it is personal in nature and its disclosure would amount to a clearly unwarranted invasion of an individual's privacy, but would employ a balancing test to arrive at that conclusion. A balancing test is an appropriate means of implementing the words of the statutory exemption. Determining whether public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy necessarily involves an evaluation of the privacy interests and a weighing of those interests against the public interest to be served in the disclosure. The information sought in this case is of such a sufficiently personal nature as to give rise to a cognizable privacy interest under the act which clearly

outweighs any potential public interest, and thus clearly tips the scale in favor of nondisclosure.

Justice CAVANAGH took no part in the decision of this case.

118 Mich App 292; 324 NW2d 61 (1982) affirmed.

OPINION BY LEVIN, J.

1. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION — ATTORNEY FEES.

    A party that prevailed substantially in an action brought under the Freedom of Information Act was entitled to reasonable attorney fees, costs, and disbursements (MCL 15.240[4]; MSA 4.1801[10][4]).

2. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION — DISCLOSURE OF INFORMATION.

    *The release by the Department of State Police of a list of names and addresses of security guards employed by certain security guard agencies to a union of security guards would not constitute a clearly unwarranted invasion of privacy under the Freedom of Information Act when measured against the extent and nature of the asserted invasion or when the benefits of disclosure were balanced against the intrusion upon privacy, thus requiring disclosure (MCL 15.243[1][a]; MSA 4.1801[13][1][a]).*

3. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION — DISCLOSURE OF INFORMATION — PUBLIC POLICY.

    *The statement of policy in the Freedom of Information Act that all persons be entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees so that the public may fully participate in the democratic process cannot properly be read as words of limitation, requiring that all requests for information under the act further the act's core purpose; the act presumes that records are disclosable, and there is no exception expressly permitting withholding of information merely because a request would not further the core purpose (MCL 15.231; MSA 4.1801[1]).*

4. ADMINISTRATIVE LAW — FREEDOM OF INFORMATION — DISCLOSURE OF INFORMATION.

    *Assuming a balancing test is to be used in determining whether information sought under the Freedom of Information Act would amount to a clearly unwarranted invasion of privacy, the benefits to be weighed should not be limited to the classic public interest; rather, the benefits both to directly interested*

.

*groups and to the general public should be considered, includ-
ing those of the requester, those of the general public, those of
parties whose benefits would exceed their losses of privacy, and
those of parties whose privacy losses would exceed their bene-
fits from receipt of the information (MCL 15.231[1], 15.243[1][a];
MSA 4.1801[1], 4.1801[13][1][a]).*

#### Opinion by Ryan, J.

5. Administrative Law — Freedom of Information — Disclosure
   of Information — Public Policy.

   *Disclosure of information under the Freedom of Information Act
   is presumed unless the disclosure would amount to a clearly
   unwarranted invasion of privacy (MCL 15.243[1][a]; MSA
   4.1801[13][1][a]).*

#### Opinion by Riley, J.

6. Administrative Law — Freedom of Information — Disclosure
   of Information — Privacy.

   *Release by the Department of State Police of lists containing the
   names and addresses of persons employed by private security
   guard agencies to a union for collective bargaining purposes is
   a clearly unwarranted invasion of the employees' privacy;
   under the Freedom of Information Act, the lists are exempt
   from disclosure (MCL 15.243[1][a]; MSA 4.1801[13][1][a]).*

7. Administrative Law — Freedom of Information — Disclosure
   of Information — Privacy.

   *Information of a personal nature contained in a public record
   may be exempt from disclosure under the Freedom of Informa-
   tion Act where disclosure would amount to a clearly unwar-
   ranted invasion of a person's privacy; in determining whether a
   request for information gives rise to a clearly unwarranted
   invasion of privacy, the act's policy section should be used in
   defining the public interest (MCL 15.231[2], 15.243[1][a]; MSA
   4.1801[1][2], 4.1801[13][1][a]).*

#### Opinion by Brickley, J.

8. Administrative Law — Freedom of Information — Disclosure
   of Information.

   *The determination whether information sought under the Free-
   dom of Information Act is exempt from disclosure on the
   ground that it is personal in nature and that disclosure would
   amount to a clearly unwarranted invasion of an individual's
   privacy should involve a balancing of the privacy interests
   involved against the public interest to be served by the disclo-*

*sure (MCL 15.231[2], 15.243[1][a]; MSA 4.1801[1][2], 4.1801[13][1][a]).*

*Gregory, Van Lopik, Moore & Jeakle* (by *Mark L. Heinen*) for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *John Wernet,* Assistant Attorney General, for the defendant.

LEVIN, J. The question is whether the Department of State Police may refuse to disclose to the United Plant Guard Workers of America reports, sought by UPGWA pursuant to the Michigan Freedom of Information Act,[1] containing the names and addresses of guards employed by certain security guard agencies, on the ground that it would constitute, within the meaning of the FOIA, a "clearly unwarranted" invasion of the guards' privacy.[2]

The circuit court ordered disclosure of the reports and taxed a nominal attorney fee. The Court of Appeals affirmed.[3] The department now seeks reversal of the order requiring disclosure, and UPGWA seeks additional attorney fees. We conclude that the department is required to disclose the reports to UPGWA and that UPGWA is entitled to additional attorney fees.

---

[1] MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.*

[2] The privacy exemption provides:

"(1) A public body may exempt from disclosure as a public record under this act:

"(a) Information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy." MCL 15.243(1)(a); MSA 4.1801(13)(1)(a).

UPGWA asserted that the request was in the public interest because it would "facilitate the dissemination to . . . employees of information concerning the union," and facilitate enforcement of existing collective bargaining agreements.

[3] *Int'l Union, United Plant Guard Workers of America v Dep't of State Police,* 118 Mich App 292; 324 NW2d 611 (1982).

I

In *Kestenbaum v Michigan State University,* 414 Mich 510; 327 NW2d 783 (1982), an evenly divided Court affirmed a Court of Appeals decision denying an FOIA request for the names and addresses of students. Both opinions in *Kestenbaum* employed the balancing test articulated, in dictum,[4] by the United States Supreme Court in *Dep't of the Air Force v Rose,* 425 US 352, 372-373; 96 S Ct 1592; 48 L Ed 2d 11 (1976), which stated that the "public interest" in disclosure is to be weighed against the "individual's right of privacy." *Kestenbaum* is not, however, binding under the doctrine of stare decisis because this Court was there evenly divided,[5] and did not constitute an adoption of a balancing test.

In *Tobin v Civil Service Comm,* 416 Mich 661; 331 NW2d 184 (1982), a "reverse FOIA" case in which a third person attempted to prevent disclosure, the parties agreed that the information requested was within the privacy exemption.[6]

This Court thus has not decided whether, in determining if an invasion of privacy is "clearly

---

[4] Because the United States Supreme Court in *Dep't of the Air Force v Rose,* 425 US 352; 96 S Ct 1592; 48 L Ed 2d 11 (1976), ordered that the requested information be disclosed, the privacy exemption was not operative. In *United States Dep't of State v Washington Post Co,* 456 US 595; 102 S Ct 1957; 72 L Ed 2d 358 (1982), the Court held only that records need not be similar to personnel or medical records to qualify for the privacy exemption.

[5] In *Breckon v Franklin Fuel Co,* 383 Mich 251, 278-279; 174 NW2d 836 (1970), this Court, considering the effect of opinions signed by four of eight justices, quoted approvingly from 20 Am Jur 2d, Courts, § 195, pp 530-531:

"A decision by an equally divided court does not establish a precedent required to be followed under the stare decisis doctrine."

Accord *Hertz v Woodman,* 218 US 205, 213-214; 30 S Ct 621; 54 L Ed 1001 (1909); *Meredith v Bd of Public Instruction,* 112 F2d 914, 916 (CA 5, 1940).

[6] *Tobin, supra,* p 671.

unwarranted," a court should measure only the nature and extent of the asserted invasion of privacy or should balance the benefits of disclosure against the intrusion on privacy.

Our conclusion that providing the information requested in the instant case would not constitute a clearly unwarranted invasion of privacy under either approach makes it unnecessary to decide whether a court should balance the interest in disclosure against the individual right to privacy or consider only the nature and extent of the potential invasion of privacy.[7]

---

[7] The issue is not a simple one. Although the language of the privacy exemption in the federal Freedom of Information Act, like its Michigan counterpart, does not mandate balancing, some authority for balancing can be found in the Senate report:

"The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will *involve a balancing* of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." (Emphasis added.)

In contrast, the House report seems to imply that Congress itself struck the balance with the phrase "clearly unwarranted":

"The limitation of a 'clearly unwarranted invasion of personal privacy' *provides a proper balance* between the protection of an individual's right of privacy and the preservation of the public's right to Government information by *excluding those kinds of files* the disclosure of which might harm the individual." (Emphasis added.)

(Both reports are reproduced in Hoglund & Kahan, Comment: *Invasion of privacy and the Freedom of Information Act: Getman v NLRB,* 40 Geo Wash L R 527, 530, ns 19, 20 [1972]).

Some courts and commentators have said that the Senate report provides more useful insight into Congressional intent. In *Getman v NLRB,* 146 US App DC 209, 212, n 8; 450 F2d 670 (1971), the United States Court of Appeals for the District of Columbia Circuit said:

"[T]he Senate report is to be preferred over the House report as a reliable indication of legislative intent because the House report was not published until after the Senate had already passed its bill."

Accord *Benson v GSA,* 289 F Supp 590, 595 (WD Wash, 1968), and *Consumers Union, Inc v Veterans Administration,* 301 F Supp 796, 801 (SD NY, 1969).

Professor Davis said that "the House committee yielded to pressures to restrict the disclosure requirements, but instead of changing the bill, it *wrote the restrictions into the committee report.*" Davis, Administrative Law (3d ed), p 69. The House report, in this context, seems to support more liberal disclosure than the Senate report.

## II

The Attorney General contends that disclosure is required only where it would serve the FOIA's "core" purpose of revealing the inner workings of the government. This argument is based on the following declaration of public policy at the outset of the FOIA:

> It is the public policy of this state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process.[8]

While the federal Freedom of Information Act does not contain such a declaration of policy, the inclusion of the policy section does *not* mean that the Legislature intended for use of the FOIA to be limited to its core purpose.

The FOIA does not require that all requests further the core purpose, or even that all requests affecting the rights of third persons further the core purpose. The act presumes records are discloseable and provides that a person has a right to public records "except as otherwise *expressly* provided by [the exceptions section]."[9] The exceptions section does not expressly permit withholding merely because a request would not further the core purpose. To the contrary, except as narrowly restricted in the exception sections themselves, the FOIA permits persons to obtain information per-

---

With respect to the Michigan FOIA, it is worth noting that the act, for five different exceptions to disclosure, expressly mandates balancing to determine the applicability of the exceptions. See MCL 15.243(1)(c), (l), (n), (o), and (t); MSA 4.1801(13)(1)(c), (l), (n), (o), and (t).

[8] MCL 15.231; MSA 4.1801(1).

[9] MCL 15.233(1); MSA 4.1801(3)(1). (Emphasis added.)

taining to trade secrets,[10] the location of archeological sites,[11] product testing data[12] and academic transcripts.[13] This information would be much more useful and likely to be used in purely private pursuits than in scrutinizing governmental activity,[14] and disclosure of such information—especially information concerning trade secrets and

[10] The FOIA provides for exemption from disclosure *only* (see MCL 15.243[1]; MSA 4.1801[13][1]) for:

"(g) Trade secrets or commercial or financial information voluntarily provided to an agency for use in developing governmental policy *if:*

(i) The information is submitted upon a *promise of confidentiality* by the public body.

(ii) The promise of confidentiality is authorized by the chief administrative officer of the public body or by an elected official at the time the promise is made.

(iii) A description of the *information is recorded by the public body within a reasonable time* after it has been submitted, maintained in a central place within the public body, and made available to a person upon request. *This subdivision shall not apply to information submitted as required by law or as a condition of receiving a governmental contract, license, or other benefit."* (Emphasis added.)

[11] The FOIA provides for exemption from disclosure *only* (see MCL 15.243[1]; MSA 4.1801[13][1]) for:

"(p) Information which would reveal the *exact* location of archeological sites. *The secretary of state may promulgate rules pursuant to Act No. 306 of the Public Acts of 1969, as amended, being sections 24.201 to 24.315 of the Michigan Compiled Laws, to provide for the disclosure of the location of archeological sites* for purposes relating to the preservation or scientific examination of sites."

[12] The FOIA provides for exemption from disclosure *only* (see MCL 15.243[1]; MSA 4.1801[13][1]) for:

"(q) Testing data developed by a public body in determining whether bidders' products meet the specifications for purchase of those products by the public body, *if disclosure of the data would reveal that only 1 bidder has met the specifications.* This subdivision shall not apply after 1 year has elapsed from the time the public body completes the testing."

[13] The FOIA provides for exemption from disclosure *only* (see MCL 15.243[1]; MSA 4.1801[13][1]) for:

"(r) Academic transcripts of an institution of higher education established under sections 5, 6 or 7 of article 8 of the state constitution of 1963, *where the record pertains to a student who is delinquent in the payment of financial obligations to the institution."*

[14] See ns 16 and 21 and accompanying text.

academic transcripts—could implicate the rights of third persons.

The Legislature decided on a broad policy of disclosure not limited to special circumstances. By declining to confine use of the FOIA to its core purpose, the Legislature seems to have decided that society would be better off if the government shares valuable information. As has been said, one aim of a freedom of information act is "to facilitate the exploitation of positive externalities created by the government's acquisition of valuable information."[15]

Restricting the use of the FOIA to its core purpose would also put a premium on the ingenuity with which a requester can characterize his interest as furthering the core purpose of the act.[16] Virtually any information held by the government could, conceivably, be used to scrutinize a governmental activity. Here, for instance, UPGWA could have requested the information not only to recruit members, but also to determine whether the State Police record of security guards is sufficiently accurate and up-to-date to ensure that dangerous or otherwise unfit persons are not allowed to become, or remain, security guards capable of carrying weapons and detaining citizens. When so characterized, the request furthers the core purpose.

Thus while the policy statement underscores the core purpose, it cannot properly be read as words of limitation, requiring that all information requests further the core purpose.

### III

In Part III, we discuss the "public interest" in

---

[15] *Kestenbaum, supra,* p 542, n 10, quoting Kronman, *The privacy exemption to the Freedom of Information Act,* 9 J Legal Studies 727, 744 (1980).

[16] See n 21. Although the note discusses problems with the "public interest," similar problems exist in determining the core purpose.

disclosure, an issue that needs to be considered only in connection with a balancing test. In Part IV, we focus only on the nature and extent of the invasion of privacy. As previously indicated, whether a balancing test is employed, or whether only the privacy interest is considered, we reach the same result.

## A

Assuming a balancing test is to be applied, it must still be determined whether a court should consider only the classic public interest, or whether a court should also consider the benefits that disclosure would bestow on the requester and other directly interested parties.[17] Although the FOIA—which does not expressly mandate a balancing test[18]—does not clearly answer this question, the act does provide that copying costs, which generally are imposed, may be waived if a particular request "can be considered as primarily benefiting the general public."[19] The FOIA apparently contemplates requests that would not benefit the general public. This, plus the factors considered above in Part II, suggests that the benefits accruing to the requester and other directly interested parties should be considered.

In addition, if courts consider only the classic public interest, the balancing test would account

[17] A request which would benefit the general public might not further the core purpose of the FOIA, and vice versa. For instance, a request by a tax attorney for Internal Revenue Service revenue rulings for use in his private practice would further the core purpose (it would reveal how government officers make governmental decisions), but would probably not benefit the general public. Conversely, a request by a philanthropist for the names of students receiving financial aid, so that the philanthropist could set up a broad-based scholarship fund, would appear to benefit the general public (students would receive aid and taxpayers would be less burdened), but would not seem to further the core purpose of the FOIA.

[18] See n 7.

[19] MCL 15.234(1); MSA 4.1801(4)(1).

for the cost imposed on one directly affected party (an addressee's loss of privacy), but would ignore the benefits that might be obtained by that directly interested party (an addressee might welcome an UPGWA solicitation) and the benefits sought by the other directly interested party (the requester). This would not only tilt the balance against disclosure—an inappropriate result considering the statutory policy in favor of disclosure and the provision that only a *"clearly* unwarranted" privacy invasion justifies withholding information[20]—but it also would elevate the "interests" of a largely disinterested public above those of directly interested requesters and addressees who might desire contact. We should not assume irrefutably that the difficult-to-quantify[21] benefits accruing to a large number of persons—dubbed the

---

[20] MCL 15.243(1)(a); MSA 4.1801(13)(1)(a). (Emphasis added.)

In *Washington Post Co v Dep't of Health & Human Services,* 223 US App DC 139, 148; 690 F2d 252, 261 (1982), the United States Court of Appeals for the District of Columbia Circuit said that the privacy exemption

"requirement that disclosure be 'clearly unwarranted' instructs us to 'tilt the balance [of disclosure interests against privacy interests] in favor of disclosure . . .' the [privacy exemption's] presumption in favor of disclosure is as strong as can be found anywhere in the Act."

Accord *Rose, supra,* p 378, n 16; *Kestenbaum, supra,* p 554 (opinion of RYAN, J.); *Mullin v Detroit Police Dep't,* 133 Mich App 46, 50; 348 NW2d 708 (1984); *UPGWA,* n 3 *supra,* p 295; *Penokie v Michigan Technological University,* 93 Mich App 650, 663; 287 NW2d 304 (1979); *Ditlow v Shultz,* 170 US App DC 352, 355; 517 F2d 166 (1975); *Getman,* n 7 *supra,* p 213; *Rural Housing Alliance v United States Dep't of Agriculture,* 162 US App DC 122; 498 F2d 73 (1974); *Disabled Officer's Ass'n v Rumsfeld,* 428 F Supp 454 (D DC, 1977).

[21] Because the "public interest" is a vague, difficult-to-quantify concept, courts have had trouble using it in this context. One commentator has noted that "[a]s a result [of the public interest requirement] there is a premium on the ingenuity with which a requester's lawyer can characterize a client's interest as public." Adler, Litigation Under the Federal Freedom of Information Act and Privacy Act (10th ed), p 111. Compare, for example, *American Federation of Government Employees v Dep't of Health & Human Services,* 712 F2d 931 (CA 4, 1983) (union's request for addresses of employees denied because benefits "inure primarily to the union") and *Van Bourg,*

classic public interest[22]—are more significant than more readily quantifiable benefits accruing to directly interested parties.

The benefits to both directly interested groups and the general public should be considered.[23] There are, therefore, four interests to be considered[24]—the interests of the requester, the general public, the "benefited addressees" (addressees whose benefit from the contact exceeds their privacy loss), and the "harmed addressees" (addres-

*Allen, Weinberg & Roger v NLRB,* 728 F2d 1270 (CA 9, 1984) (union's request for addresses of employees granted because the union "raised the possibility that the representation [election] was conducted unlawfully"). See also *Heights Community Congress v Veterans Administration,* 732 F2d 526, 530 (CA 6, 1984) (desegregation group requested addresses of VA loan recipients to investigate racial bias and steering, but request denied because this "legitimate public interest" was outweighed by "the basic right in this nation simply to be left alone"); *Ferri v Bell,* 645 F2d 1213, 1218 (CA 3, 1981) (prisoner's request for arrest record of prosecution witness, sought in order to help overturn his conviction, granted because the "public at large has an important stake in ensuring that criminal justice is fairly administered").

[22] In a pluralistic society, there cannot be *a* public interest—there only can be a diverse hodgepodge of values and interests, the sum of which might be called the "public interest." The "public interest" is often a shorthand method of accounting for difficult-to-quantify benefits that accrue to a large number of persons. UPGWA is part of "the public"; its interests, even if "private," are part of a broader public interest. Similarly, benefits to addressees also further a broadly viewed public interest.

[23] It is unclear whether harm to nonaddressees and the public interest should be considered in balancing interests. The state, if required to divulge information in contravention of a promise of confidentiality, might find it more difficult to obtain cooperation in the future, and increased compliance costs would harm the public. (See generally *Washington Post Co,* n 20 *supra,* pp 146, 168.) Also, the submission by the Michigan Association of Private Detectives and Security Guard Agencies, Inc., of an amicus brief opposing disclosure suggests that security guard agencies might prefer that the addresses of their employees not be disclosed. We are of the opinion that the Legislature, by providing for broad disclosure limited by few exceptions, determined that only specified interests (*i.e.,* the privacy interests of addressees) should weigh against disclosure.

[24] Except as exemptions to disclosure provide (see generally MCL 15.243; MSA 4.1801[13]), the FOIA makes the agency's interests subservient to the other interests.

sees whose privacy loss exceeds their benefit from contact).[25]

## B

The requester, UPGWA, has a strong proprietary interest since the information would be useful and is difficult otherwise to obtain.[26] Indeed, as the Court of Appeals noted, "this is presumably one reason why [UPGWA] is willing to bear the risk and expense of litigating the issues now before this Court."[27]

The classic "public interest" is very limited in this case. The union did not assert that the request would further the FOIA's core purpose. The general public purpose claimed is the encouragement of collective bargaining, but this is not compelling. Collective bargaining is governed by its own body of law. If the information requested were neces-

---

[25] Without use restrictions, addressees for whom the privacy cost is greater than the benefit from contact if there are no use restrictions, but for whom benefit from contact is greater than privacy cost if use restrictions are used, are "harmed addressees." With use restrictions, such addressees are "benefited addressees."

[26] The availability of alternative sources of information has been considered by some courts. See *Kestenbaum, supra,* pp 530-533; *Mullin,* n 20 *supra,* p 53; *UPGWA,* n 3 *supra,* p 295; *Penokie,* n 20 *supra,* p 659; *Getman,* n 7 *supra,* pp 215-216; *Ditlow,* n 20 *supra,* p 358; *Disabled Officer's,* n 20 *supra,* p 458; *Van Bourg,* n 21 *supra,* p 1273; *Rural Housing Alliance,* n 20 *supra,* p 127; *Minnis v Dep't of Agriculture,* 737 F2d 784, 786 (CA 9, 1984).

Here, UPGWA could attempt to obtain an *"Excelsior* list" of employees who are eligible to vote in a union election, but only after the approval or direction of an election, and this would require a showing by UPGWA that thirty percent of the employees were interested in the union. See *Excelsior Underwear, Inc,* 156 NLRB 1236; 61 LRRM 1217 (1966). The NLRB has acquiesced to the disclosure of *"Excelsior* lists" which contain up to a thirteen percent error factor in the addresses of eligible voters. See *Days Inn of America, Inc,* 216 NLRB 384; 88 LRRM 1224 (1975). UPGWA could also negotiate with the employers for a list of employee addresses, but this would presumably require some concession by the union. Finally, while UPGWA might use other means of communicating with potential members, methods such as distributing leaflets might be ineffective at organizing dispersed workers.

[27] *UPGWA,* n 3 *supra,* p 297. See also Kronman, n 15 *supra,* p 744.

sary to actuate the public benefits of collective bargaining, one would expect that labor law would provide a means for its acquisition. UPGWA's claimed public benefit has not been deemed, as a matter of labor law, sufficiently important to require employers to divulge the requested information;[28] the claimed public benefit should not loom larger for the FOIA.

Although labor law does not provide a means for the acquisition of the requested information, it does not follow that the information cannot be obtained pursuant to the FOIA. In *Excelsior Underwear, Inc,* 156 NLRB 1236; 61 LRRM 1217 (1966), the National Labor Relations Board recognized that a union might attempt to secure names and addresses by means other than the acquisition of an *"Excelsior* list" of employees eligible to vote in a representation election.[29] *Excelsior* merely validated one means of acquiring names and addresses —it did not make that means exclusive or bar other means.

In *Washington Post Co v Dep't of Health & Human Services,* 223 US App DC 139, 145; 690 F2d 252 (1982), the United States Court of Appeals for the District of Columbia Circuit, in concluding that "information that is privileged against discovery can nonetheless be obtained under FOIA," reasoned that "the issues in discovery proceedings and the issues in the context of an FOIA action are quite different" and that therefore an "independent inquiry" was required to evaluate the privacy issues.[30]

---

[28] Under certain circumstances, a union may require an employer to disclose the names and addresses of certain employees. See the discussion of *Excelsior,* n 26 *supra.*

[29] Michigan law appears to be in accord with *Excelsior.* See *Helper v Dep't of Labor,* 64 Mich App 78; 235 NW2d 161 (1975).

[30] In contrast, in *United States v Weber Aircraft Corp,* 465 US 792;

In the instant case, issues not involved in *Excelsior* are significant. Because *Excelsior* involved a private employer, and not the government, the board was not called upon to consider the effect of a freedom of information act. The board might have promulgated a different rule if Congress had enacted a "private" equivalent to the Freedom of Information Act requiring private parties to disclose information.

Also, an *Excelsior* list is available only after the direction or approval of an election,[31] and is designed, at least in part, to reduce the number of post-election challenges by enabling the union to learn the employer's position on voter eligibility before the election.[32] In the instant case, the list requested does not purport to be a list of eligible voters, but is rather a list of security guards who may or may not be eligible to vote in a union election. Because the employer is not taking a position on voter eligibility, the list requested has less legal significance than an *Excelsior* list.

Finally, because the list requested is in the possession of the state, the employer has no bur-

104 S Ct 1488; 79 L Ed 2d 814, 824 (1984), the United States Supreme Court refused to grant an FOIA request because disclosure would have "circumvented" the "weighty policies underlying *discovery* privileges." (Emphasis supplied.)

In *Weber* the Supreme Court was construing FOIA exemption 5 which allows withholding of:

"inter-agency or intra-agency memorandums or letters which *would not be available* by law to a party other than an agency *in litigation* with the agency." 5 USC 552(b)(5). (Emphasis added.)

Because exemption 5 requires consideration of availability in litigation, a court, in determining whether information must be disclosed pursuant to the FOIA, *must* first decide whether the information would be discoverable.

The separate privacy exemption, however, stands on its own, and does not incorporate another body of law.

[31] See *Excelsior, supra.* See also Morris, The Developing Labor Law (2d ed), p 382.

[32] See *Gray Drug Stores, Inc,* 197 NLRB 924; 80 LRRM 1449 (1972).

den of preparation, as it would if an *Excelsior* list were requested.

Certain addressees who would like to unionize might be unaware of UPGWA, and would be pleasantly surprised by the receipt of an UPGWA solicitation.[33] Although no evidence has been presented on this aspect of the matter,[34] the number of "benefited addressees" should not be underestimated. Solicitors like UPGWA would not go to the trouble and expense of an FOIA request and a mailing unless they expected to profit from the endeavor. They can profit only if addressees respond favorably, and addressees are not likely to respond favorably unless they believe they would be benefited. Therefore, UPGWA, which knows more about its affairs than we do, must believe that a good number of addressees will believe they would benefit from the contact.

## IV

Solicitation could result in an invasion of an addressee's privacy interest. The "short, though regular, journey from the mail box to the trash can,"[35] is not a major burden, but some addressees might suffer a greater loss. Although one would expect UPGWA to treat potential members well in order to induce cooperation, some addressees might fear harassment by the union, and, even if

---

[33] In *Disabled Officer's,* n 20 *supra,* p 458, a United States district court considered that disclosure might benefit certain addressees.

[34] UPGWA could, for instance, have attempted to show that guards had communicated with the union regarding representation. In some cases, benefit to the addressees can probably be assumed. In *Ditlow,* n 20 *supra,* for instance, an attorney wished to communicate with travelers who might recover damages in a class action. See also *UPGWA,* n 3 *supra,* p 296.

[35] *Kestenbaum, supra,* p 555 (opinion of Ryan, J.), quoting *Lamont v Comm'r of Motor Vehicles,* 269 F Supp 880, 883 (SD NY, 1967). See also Kronman, n 15 *supra,* p 745.

use restrictions were employed effectively, some addressees might still fear that their addresses could become "public" and such addressees could therefore suffer a loss of peace of mind.[36] A few addressees might even find the mere thought of unionization repulsive and offensive, akin to pornography.[37]

There is little evidence concerning the actual effects UPGWA's solicitations might have on addressee privacy.[38] The state's promise of confidentiality[39] and the express exemption barring the disclo-

---

[36] See Kronman, n 15 *supra*, p 747.

[37] *Id.*, p 745.

[38] In *Kestenbaum, supra*, pp 544, 551, Justice RYAN suggested that a court first inquire whether requested information was "of a personal nature" and, if so, then determine whether the disclosure of the information "would constitute a 'clearly unwarranted invasion of an individual's privacy.' "

[39] It has been said that "[o]ther things being equal, release of information provided under a pledge of confidentiality involves a greater invasion of privacy than release of information provided without such a pledge." *Washington Post Co, supra*, 223 US App DC 150. Accord *Ditlow*, n 20 *supra*, p 358. See also *Rural Housing*, n 20 *supra*, p 127, n 21; *Robles v EPA*, 484 F2d 843, 846 (CA 4, 1973). The reasons for this belief are not compelling, and apply with little force in this case.

While the FOIA exempts from disclosure "[r]ecords or information specifically described and exempted from disclosure by *statute*" (emphasis added), MCL 15.243(1)(d); MSA 4.1801(13)(1)(d), there is no corresponding provision concerning information described in administrative regulations or promises. A regulation, *qua* regulation, therefore, does not defeat disclosure. See *Legal Aid Society of Alameda County v Schultz*, 349 F Supp 771, 776 (ND Cal, 1972) ("administrative promises of confidentiality cannot extend the command of the Freedom of Information Act that only matters 'specifically exempted . . . by *statute*' are [exempted from disclosure]").

The significance, if any, of a pledge of confidentiality is attributable to the expectation of privacy the pledge may generate (see *Washington Post Co, supra*, 223 US App DC 150) or to the belief that such a pledge would not have been made unless the information submitted was truly personal.

Assuming that a pledge of confidentiality can create an expectation of privacy if properly communicated, there is no evidence that the guards in this case were aware of the pledge. The Court should not assume such awareness especially since the employers, not the guards, submitted the information to the State Police. See MCL 338.1068(1); MSA 18.185(18)(1).

sure of the addresses of police officers[40] arguably

More importantly, while a pledge of confidentiality might induce an expectation that information will not be released, a pledge does not enhance or change the "quality" of the information and make it "[i]nformation of a *personal nature*" within the meaning of the privacy exemption. To illustrate, suppose a regulation required every citizen to submit to the state the third letter of the citizen's last name. A pledge of confidentiality would create an expectation of "privacy" (*i.e.,* lack of disclosure), and breach of the pledge might be a "clearly unwarranted" breach of trust, but few would assert that a breach constituted an invasion of privacy. A pledge of confidentiality does not affect whether the underlying information is "information of a personal nature."

While, arguably, a pledge of confidentiality might give rise to the inference that the underlying information is personal in nature, there is no need to rely on an inference. This Court can directly examine the content of the information and make a judgment whether it is personal. The State Police may have honestly believed that the information was "personal" and thus in need of confidentiality, but the State Police possess no special ability to determine whether information is personal (in the generic sense), and the State Police certainly have no expertise in determining whether information is "of a personal nature" within the meaning of the FOIA.

Although there has been no allegation in the instant case that the pledge of confidentiality was given to subvert the FOIA, an agency might make such a pledge to accomplish that objective. See, *e.g.,* *Washington Post Co, supra,* 223 US App DC 150 ("to allow the government to make documents exempt by the simple means of promising confidentiality would subvert FOIA's disclosure mandate"); *Ackerly v Ley,* 137 US App DC 133, 136-137, n 3; 420 F2d 1336 (1969) ("it will obviously not be enough for the agency to assert simply that it received the file under a pledge of confidentiality to the one who supplied it. Undertakings of that nature can not, in and of themselves, override the Act"). Accord *Robles, supra,* p 846; *Providence Journal Co v FBI,* 460 F Supp 778, 786 (DC RI, 1978); *Legal Aid Society, supra,* p 776. See, also, Davis, Administrative Law (Supp 1970), § 3A.22, p 164.

Because a confidentiality pledge is of limited value in determining whether information is "[i]nformation of a personal nature" disclosure of which "would constitute a clearly unwarranted invasion of an individual's privacy," and because there is a potential for abuse, a pledge of confidentiality should be given little, if any, weight.

[40] The FOIA, MCL 15.243(1)(t); MSA 4.1801(13)(1)(t), permits an agency to withhold "[u]nless the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance, public records of a police or sheriff's agency or department, the release of which would do any of the following: . . . (iii) Disclose the personal address or telephone number of law enforcement officers or agents or any special skills that they may have."

The Attorney General argues that because security guards are quasi-law enforcement officers subject to some of the same risks as

suggest that the information is "information of a personal nature" the disclosure of which "would constitute a clearly unwarranted invasion of an individual's privacy." Nevertheless, because privacy is so subjective a concept—virtually anything can be embarrassing in the appropriate circumstance[41]—we regard as significant the absence of evidence establishing or even tending to show that the requested information is personal in nature. We are not willing to "deem" these addresses personal in nature as a matter of law.

While we realize that FOIA is often used as a shortcut to obtain information, and that the compilation of empirical data might therefore defeat a requester's objective, and that, in cases in which the requested information is truly embarrassing, the state might find it difficult to secure witnesses who would openly testify about, and thereby reveal their relation to, the embarrassing information, we nonetheless conclude that the state has failed to meet its burden of demonstrating that the requested information is so personal and private[42]

police officers, the addresses of guards should be accorded the same, somewhat qualified, exemption from disclosure.

Under the FOIA, however, withholding of information is permitted only when "*expressly* provided by [the exceptions section]" MCL 15.233(1); MSA 4.1801(3)(1) (emphasis added). The exceptions section does not "*expressly*" permit withholding the addresses of security guards.

The fact that the addresses of law enforcement officers need not be disclosed does *not* mean that the addresses comprise "[i]nformation of a personal nature" the disclosure of which "would constitute a clearly unwarranted invasion of an individual's privacy." If addresses were personal, there would have been no reason to include a separate section exempting from disclosure officers' addresses. The exemption for the addresses of law enforcement officers was added not because an address is information of a personal nature, but because the exemption is thought to promote effective police work or to be necessary for the protection of law enforcement officers and their families. The Legislature did not feel that such an address exemption was necessary for security guards.

[41] See *Kestenbaum, supra,* pp 544, 554; *Ditlow,* n 20 *supra,* p 356, n 12; Kronman, n 15 *supra,* p 752.

[42] A showing that disclosure would constitute the tort of "public

that the address lists should not be disclosed.[43]

## V

UPGWA claims it is entitled to recover reasonable, actual attorney fees, costs, and disbursements, and is not limited to an attorney fee taxed as costs pursuant to § 2441(1)(b) of the Revised Judicature Act.[44] We agree.

---

disclosure of private facts" would seem to evidence that requested information is personal and private. The Texas Court of Appeals employed this standard in *Hubert v Harte-Hanks Texas Newspapers, Inc,* 652 SW2d 546 (Tex App, 1983). (The federal courts have, with regard to the privacy interests of "public figures," analogized the issues involved in the federal Freedom of Information Act to those involved in freedom of speech libel cases. See, *e.g., Fund for Constitutional Government v National Archives & Records Service,* 211 US App DC 267; 656 F2d 856, 864-865 [1981], and *Common Cause v National Archives & Records Service,* 202 US App DC 179, 184-185; 628 F2d 179 [1980].)

The federal Freedom of Information Act characterizes as especially private "medical and personnel" files, 5 USC 552(b)(6), and, although the federal courts no longer *require* an agency to show that records are similar to personnel or medical records in order to qualify for the privacy exemption (see *United States Dep't of State v Washington Post Co,* 456 US 595, 600; 102 S Ct 1957; 72 L Ed 2d 358 [1982]), such a demonstration would still militate in favor of withholding information.

Surveys of interested persons' attitudes about confidentiality have also been considered as evidence of the personal nature of information. See *Simpson v Vance,* 208 US App DC 270, 274; 648 F2d 10 (1980); *Washington Post Co, supra,* 223 US App DC 149. But see the dissent in *Washington Post Co, supra,* 223 US App DC 164-165. Similarly, in *Kestenbaum, supra,* p 546, Justice RYAN, apparently believing that the amount of effort expended to keep information confidential relates to whether information is personal and private, felt it was important that very few students had "opted out" of being listed in the student directory. Here, the Post Office's list of persons who have elected to be removed from mailing lists pursuant to 39 USC 3008 might have been compared, *in camera* if necessary, to the persons on the lists requested by UPGWA. Also, the state could have attempted to demonstrate that similar unionization attempts involved invasions of privacy. See *Getman,* n 7 *supra,* p 214.

[43] Because the privacy interest invaded is minimal, regardless of whether use is restricted, and because UPGWA has not objected to the use restrictions added by the Court of Appeals, we need not decide whether use restrictions are valid.

[44] MCL 600.2441(1)(b); MSA 27A.2441(1)(b).

The FOIA provides concerning attorney fees:

> (4) If a person asserting the right to inspect or to
> receive a copy of a public record or a portion
> thereof prevails in an action commenced pursuant
> to this section, the court shall award reasonable
> attorneys' fees, costs, and disbursements. If the
> person prevails in part, the court may in its discre-
> tion award reasonable attorneys' fees, costs, and
> disbursements or an appropriate portion thereof.
> The award shall be assessed against the public
> body liable for damages under subsection (5).[45]

The act clearly provides that reasonable fees and
other expenses *must*[46] be awarded to a requester
who prevails completely. Arguably, UPGWA did not
prevail completely since its use of the disclosed
information has been restricted.[47] While UPGWA's
victory may not be total, it is still a very substan-
tial one, and UPGWA has obtained everything it
initially sought. Accordingly, UPGWA may recover
reasonable attorney fees, costs, and disbursements
that have been incurred or will be incurred on
remand.

We remand to the circuit court for a determina-
tion of the amount, and reasonableness, of
UPGWA's claimed attorney fees, costs, and disburse-
ments.

BOYLE, J., concurred with LEVIN, J.

RYAN, J. In my judgment, the provisions of § 13
of the Michigan Freedom of Information Act do
not justify the refusal to disclose the information
requested by plaintiff in this case because revela-
tion of the requested information would not consti-

---

[45] MCL 15.240(4); MSA 4.1801(10)(4).

[46] We note, in passing, that under the federal Freedom of Informa-
tion Act, the award of costs is discretionary. See 5 USC 552(a)(4)(E).

[47] See, however, n 43.

tute a "clearly unwarranted invasion of . . . privacy" of the security guards involved. I write separately to say so because I am unable to subscribe to some of what my brother LEVIN has written.

My views concerning the general purpose of the state FOIA, the intent of its drafters, the meaning of the principal operative language of the public policy section,[1] and the privacy exemption provisions[2] are all set forth in my opinion in *Kestenbaum v Michigan State University*, 414 Mich 510; 327 NW2d 783 (1982). There is no need to reiterate them here.

It suffices to say that the only reasonably debatable point upon which the resolution of this litigation ought to turn is whether disclosure by the state police of the names and home addresses of the security guards in this case, and the identity of their employers, if an invasion of privacy at all, is one "clearly unwarranted" within the meaning of § 13 of the act.

My colleagues seem to be divided over the question whether courts should engage in a balancing of interests as a means of determining whether, in a given case, particularly this one, the public benefit to be derived from disclosure of requested information so outweighs the privacy interest involved as to warrant the conclusion that the privacy invasion was *not* clearly unwarranted.

It seems plain to me that deciding whether an asserted invasion of privacy is warranted, unwarranted, or clearly unwarranted involves identification and application of a standard, a criterion, to provide an answer to the question, "Compared to what?" That is the "balancing" I referred to in

---

[1] MCL 15.231(2); MSA 4.1801(1)(2).

[2] MCL 15.243(1)(a); MSA 4.1801(13)(1)(a).

*Kestenbaum* that has been forced upon the judiciary by a purposefully imprecise legislation for resolution of those cases in which a plain and serious invasion of privacy will result from disclosure of the requested information. Since the FOIA says nothing about conditioning the disclosure of requested information upon the purpose for which the requester wants it, or the manner in which he promises to use it, the assumption ought to be made that the information might be used for any purpose, even criminal misuse; but surely such a possibility cannot be a basis for nondisclosure under a statute whose policy is one of disclosure. As was indicated in both opinions in *Kestenbaum, supra,* whether the disclosure of requested information is a "clearly unwarranted invasion of privacy" does not depend upon the possible worthwhile use to which the information may be put or the damage that can conceivably be done by its misuse. The inquiry is whether disclosure *itself* would amount to a clearly unwarranted invasion of privacy. In a close and difficult case, that will require, as an analytical aid to determining whether the invasion of privacy that may attend its disclosure is clearly unwarranted, a judicial determination (a balancing) whether there is a significant public purpose likely to be served by disclosure of the information. It is not every case, however, in which an appropriately self-restrained judiciary needs to make value choices in the name of "balancing." In some cases, the information sought is simply not "[i]nformation of a personal nature"—a condition precedent to application of the "invasion of . . . privacy" exemption of § 13(1)(a) of the act. In my judgment, that was the situation in the case of the names and addresses of the 44,000 Michigan State University students in *Kestenbaum.* In such cases, no balancing of inter-

ests is required. But even if reasonable minds might differ concerning the question whether names and addresses of security guards and the identity of their employers is "information of a personal nature," in construing the application of the state FOIA there is a presumption in favor of disclosure. The FOIA is an expression of a legislative policy of disclosure. If revelation of the information is merely an invasion of privacy, disclosure is required. If revelation is arguably an unwarranted invasion of privacy, disclosure is still required. It is only when the privacy invasion is clearly unwarranted that the exception provision of § 13 is an obstacle to revelation. The day may come when this Court will be presented with a claimed invasion of privacy of that dimension, but this is not it.

I confess to great difficulty in identifying any basis for the conclusion, in this day and age, that one's name, address, and the identity of his employer is "information of a personal nature," within the meaning of the exemption from disclosure provisions of § 13 of the FOIA or that public disclosure of such information is, per se, a clearly unwarranted invasion of privacy, whether considered in the abstract or as compared to an assertedly countervailing public purpose. See *Kestenbaum*, opinion of RYAN, J., n 18.

I concur in part V of my brother LEVIN's opinion concerning attorney fees.

BOYLE, J., concurred with RYAN, J.

RILEY, J.

## I

I believe that the release by the Department of

State Police of lists containing the names and home addresses of persons employed by private security guard agencies to a union for collective bargaining purposes constitutes a clearly unwarranted invasion of the employees' privacy and therefore such lists are exempt from disclosure pursuant to § 13(1)(a) of the Freedom of Information Act, 1976 PA 442, as amended, MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.*

The FOIA provides for public access to public records kept by governmental bodies provided that the requested information does not fall within any enumerated exemption set forth in the act.[1]

The legislative intent of the FOIA is articulated in MCL 15.231(2); MSA 4.1801(1)(2):

> (2) It is the public policy of this state that all persons are entitled to full and complete information *regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act.* The people shall be informed *so that they may fully participate in the democratic process.* [Emphasis added.]

Thus the FOIA provides public access to valuable information regarding the affairs of government, and at the same time, it subjects the activities of government to public scrutiny.

"Public body" and "public record" are defined in §§ 2(b) and 2(c) of the act. MCL 15.232(b), 15.232(c); MSA 4.1801(2)(b), 4.1801(2)(c). The parties here agree that the defendant department is a "public body." The parties also agree that the requested information is contained in a "public record."[2]

The parties hereto agree that the thrust of the

---

[1] MCL 15.243; MSA 4.1801(13).

[2] For purposes of this opinion, I accept, without agreeing, that the information sought herein is contained in a "public record."

FOIA is a policy of disclosure and, therefore, the public body bears the burden of justifying refusal of a disclosure request. The parties agree, also, that the issue before this Court today is solely whether the department properly exempted the requested records from disclosure pursuant to § 13(1)(a) of the act which provides:

> A public body may exempt from disclosure as a public record under this act:
> (a) Information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy. [MCL 15.243(1)(a); MSA 4.1801(13)(1)(a).]

In analyzing requests for release of records which are claimed to fall within the privacy exemptions of the state and federal acts, many courts have followed the approach articulated by the United States Supreme Court in *Dep't of the Air Force v Rose,* 425 US 352; 96 S Ct 1592; 48 L Ed 2d 11 (1976), *i.e.,* that the public interest must be weighed against the invasion of privacy. In *Dep't of the Air Force, supra,* 372, the Court explained:

> Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act "to open agency action to the light of public scrutiny."

As Justice Levin recognizes, it has not been clear, however, exactly what is the public interest that is to be balanced against the invasion of privacy. I conclude that the extent to which disclosure would effectuate the purpose of the FOIA, as expressed in § 1(2), is a factor properly considered in evaluating the public interest in disclosure. This

is not to say that disclosure must benefit the public as a whole, but it does require that release of the information be, in the language of the policy section, "consistent with this act."

It is significant to note that there is an important difference between the Michigan FOIA and the federal act, 5 USC 552. The federal act, unlike our act, contains no statement of public policy. In addition, a survey of the federal cases indicates that their decisions have gone far beyond the initial standard first enunciated by the United States Supreme Court in *Dep't of the Air Force v Rose, supra.*

I agree with Justice LEVIN that "[t]he FOIA does not require that all requests further the core purpose" as expressed in the policy section because that would, in effect, be creating a separate exemption not intended by the Legislature. However, I believe this section cannot be ignored. The FOIA's policy section must be used in defining the public interest side when determining whether a request for information gives rise to a clearly unwarranted invasion of privacy. The more the release of the information would further the core purpose of the act, the more the scale will tip in favor of disclosure.

It is for these reasons that I decline to follow the federal lead, or that of Justices LEVIN and RYAN today,[3] and adopt a broad conception of any unrelated public purpose as opposed to a purpose consistent with the Michigan Legislature's declaration of intent in § 1(2) of the Michigan FOIA.

## II

In evaluating the privacy interests involved in

---

[3] I recognize that Justice LEVIN does not expressly endorse a balancing approach.

the case at bar, it is instructive to note that the Private Security Guard Act of 1968, MCL 338.1051 *et seq.;* MSA 18.185(1) *et seq.,* prescribes, in part, certain powers and duties of the department with regard to private security guards and private security guard agencies. The purpose of the act is to license and regulate the security guard industry in order to protect the general public from any unauthorized and unethical procedures by individuals engaged in private security guard operations. The act also provides the department with the authority to promulgate rules and regulations. One such rule requires security guard agencies to file quarterly reports containing the names and addresses of personnel with the department:

> A complete employee personnel list shall be filed with the department by each licensee on a quarterly basis. *This list shall be kept confidential except for official use.* [1979 AC, R 28.4003. Emphasis added.]

These quarterly reports (which include names and home addresses of each licensee's employees) are used by the department to verify that the individuals who are employed with private security guard agencies are in compliance with the employment qualifications specified in the act.[4] The department licenses only the agencies, not their individual employees. However, the act does require that individual employees meet certain minimum qualifications and requires that the employer submit a set of fingerprints of each employee to the department so that it may determine whether the qualifications have been met. MCL 338.1067, 338.1068; MSA 18.185(17), 18.185(18).

[4] MCL 338.1056(1)(a), (e), (f), (k), 338.1067(2); MSA 18.185(6)(1)(a), (e), (f), (k), 18.185(17)(2).

## III

Turning next to the public interest asserted, the quarterly reports in the instant case were requested by the UPGWA for the purpose of furthering union activity. The request with regard to one agency was to disseminate information concerning organization of a union. The purpose with regard to the other two agencies was to facilitate the enactment of collective bargaining agreements. As Justice Levin notes, the general public purpose asserted—the encouragement of collective bargaining—is not compelling. Further, in assessing the extent to which disclosure would further the core purpose of the act as expressed in § 1(2), no claim is made that release of the requested information would either serve to increase public awareness and understanding of the actions and operations of public agencies, officials, or employees, or that it would facilitate participation in the democratic process.

## IV

I conclude that in balancing the privacy interest at stake with the public interest in disclosure (which includes the "core purpose" factor), it is clear that the privacy interest does outweigh the public interest, thus mandating denial of disclosure of the requested records. While release of names and home addresses in some instances *may* not be a clearly unwarranted invasion of privacy, I am persuaded that it is in this case. Here the requested information is from an involuntary submitter under a requirement that also provides that the information be kept confidential. Moreover, this request intrudes upon and may adversely affect the confidentiality needs usually associated with private security personnel.

I also believe that whether or not the records in question are otherwise obtainable does not affect the disclosability issue. Nothing in the act suggests that records that are available elsewhere are to be treated any differently than records not available elsewhere. Further, as noted by the Court of Appeals in *Mullin v Detroit Police Dep't,* 133 Mich App 46, 54; 348 NW2d 708 (1984), the " 'available elsewhere' inquiry [has been] used both to support and to deny disclosure . . . ." Hence, I am persuaded that this factor is irrelevant to the determination of disclosability.

Finally, I conclude that it is a distortion of the language of the FOIA and the legislative intent declared therein to argue that the controlling factor, in weighing whether an invasion of privacy is warranted, is the particular public purpose claimed by those requesting the information contained in the public records. To be sure, my colleagues cite several cases to support the conclusion they have reached today, but in almost every instance they rely on federal cases which speak to the federal act which contains no express statement of public policy. I decline, however, to read the policy section out of the Michigan act. I consider this act in its entirety as it was written. Thus, I am persuaded that we are not bound by the balancing of interests test espoused by either Justices LEVIN or RYAN (*i.e.,* the public purposes of those seeking disclosure versus the extent of the invasion of privacy). I agree with former Chief Justice FITZGERALD's opinion in *Kestenbaum v Michigan State University,* 414 Mich 510; 327 NW2d 783 (1982), holding that the particular purpose for which the information is requested is not the controlling focus of analysis when scrutinizing the public benefits of disclosure. The determination should also include whether the release is

consistent with the legislative intent as expressed in the policy section of the act. I am persuaded that an approach which takes into account the extent to which disclosure would further the public purpose of the act is the most workable approach and, further, is most consistent with the intent of the act. I believe that the department properly exempted the requested records from disclosure. Thus, I would reverse.

WILLIAMS, C.J., concurred with RILEY, J.

BRICKLEY, J. I concur with Justice RILEY for the following reasons.

I agree that the Department of State Police may refuse to relinquish the security guards' names and addresses to the union on the ground that such "[i]nformation [is] of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy." MCL 15.243(1)(a); MSA 4.1801(13)(1)(a). However, I would employ a balancing test to reach this conclusion. The privacy interests at stake in this case, in my opinion, clearly outweigh any potential public interest, regardless of whether the definition of public interest is limited by the words of the preamble to the Michigan Freedom of Information Act, MCL 15.231(2); MSA 4.1801(1)(2), as Justice RILEY advocates, or given a more expansive reading, as exemplified by Justice RYAN's opinion in *Kestenbaum v Michigan State University,* 414 Mich 510, 552-555; 327 NW2d 783 (1982).

A balancing test is an appropriate means of implementing the words of the statutory exemption. Determining whether "public disclosure of the information would constitute *a clearly unwarranted* invasion of an individual's privacy" neces-

sarily involves an evaluation of the privacy interests and a weighing of those interests against the public interest to be served in the disclosure.

As Justice LEVIN observes, both opinions in *Kestenbaum* employed a balancing test. The FITZGERALD opinion in *Kestenbaum* noted:

> It generally has been accepted, however, that where the requested information might fall under the federal privacy exemption, *a balancing test must be employed, i.e.,* the public interest in disclosure must be weighed against the potential invasion of privacy. [*Kestenbaum, supra,* p 526, emphasis added (citing federal cases).]

That opinion further stated that it "also is necessary under the state act to balance interests." *Id.,* p 527. The RYAN opinion in *Kestenbaum* also indicated that "[t]he Court must balance the public interest against the privacy interests with a 'tilt' in favor of disclosure." *Id.,* p 561.

On the federal level, the balancing test first articulated in *Dep't of the Air Force v Rose,* 425 US 352; 96 S Ct 1592; 48 L Ed 2d 11 (1976), has gained wide acceptance. See *Minnis v Dep't of Agriculture,* 737 F2d 784, 786 (CA 9, 1984); *Heights Community Congress v Veterans Administration,* 732 F2d 526, 528 (CA 6, 1984); *American Federation of Government Employees v Dep't of Health & Human Services,* 712 F2d 931, 932 (CA 4, 1983); *Washington Post Co v Dep't of Health & Human Services,* 223 US App DC 139, 147; 690 F2d 252 (1982); *Wine Hobby USA, Inc v Internal Revenue Service,* 502 F2d 133, 136 (CA 3, 1974); *Getman v NLRB,* 146 US App DC 209; 450 F2d 670 (1971). For example, the Circuit Court of Appeals for the District of Columbia, in *Washington Post Co, supra,* stated that in "determining whether disclosure is clearly unwarranted—we

*must* balance the public interest in disclosure against the privacy interests of [the persons who are the subjects of the information]." *Id.,* p 147 (emphasis added). Likewise, the Court of Appeals for the Sixth Circuit recently stated that in *Rose, supra,*

> the Supreme Court *mandated* that the court balance the individual's right to privacy against disclosure's benefit to the public interest in determining if the disclosure would result in a "clearly unwarranted invasion of personal privacy." [*Heights Community Congress, supra,* p 528.]

Application of the balancing test under either the state or federal exemption is a two-part process. Under the federal act, a court must first determine whether the information contained may be identified as applying to a particular individual.[1] If so, it must determine whether disclosure would constitute "a clearly unwarranted invasion of personal privacy." The balancing test comes into play in the second stage of the analysis.

Likewise, under the state act, a court must first determine whether the requested information is "of a personal nature." If it is found to be personal, then the question is whether disclosure would constitute a clearly unwarranted invasion of an individual's privacy. Again, this is where the

---

[1] The federal FOIA privacy exemption applies to information contained in "personnel and medical files and similar files . . . ." 5 USC 552(b)(6). The United States Supreme Court has interpreted that language broadly, however, holding that the exemption applies to any

" '. . . Government records on an individual which can be identified as applying to that individual.' [Citation to House Report omitted.] When disclosure of information which applies to a particular individual is sought from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy." *Dep't of State v Washington Post Co,* 456 US 595, 603; 102 S Ct 1957; 72 L Ed 2d 358 (1982).

*Rose* balancing test comes into play. See *Kestenbaum, supra,* pp 550-551 (opinion of RYAN, J.).

## I

I find the information sought in this case to be of such a sufficiently personal nature as to give rise to a cognizable privacy interest under the act. In *Kestenbaum,* Justice RYAN concluded that the names and addresses of Michigan State University students were not sufficiently personal to allow nondisclosure under the exemption. *Kestenbaum, supra,* p 546. However, Justice RYAN's analysis does not seem to preclude the possibility that names and addresses of different persons, in a different situation, might be sufficiently personal in nature.

In reaching his conclusion in *Kestenbaum,* Justice RYAN noted "that names, addresses, telephone numbers, *and other standard identifying information* simply are not embarrassing information 'of a personal nature' *for the overwhelming majority of students* at Michigan State University." *Id.,* p 546 (emphasis added). It may be said that linking names and addresses with the fact of employment by a security guard agency is not "standard information." Also, Justice RYAN seems to have considered the characteristics and situation of the persons subject to the disclosure in coming to his conclusion. That opinion noted explicitly:

> We leave for another day the question whether, in certain unusual circumstances, ordinarily impersonal information might take on an intensely personal character. [*Id.,* p 547.]

There are several aspects of this case that heighten the privacy interest at stake. First, the information here would reveal more than the

name and address of the individual, it would indicate the type and place of employment. A strong case for distinguishing security guards from other types of addressees may be made on the basis of the law enforcement nature of their work. It is certainly relevant to note that the Michigan FOIA provides specific exemptions relating to police and sheriff's departments.

> *A public body may exempt from disclosure* as a public record under this act[,]
>
>         * * *
>
> [u]nless the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance, *public records of a police or sheriff's agency or department, the release of which would do any of the following:*
>
>         * * *
>
> *Disclose the personal address or telephone number of law enforcement officers or agents* . . . . [MCL 15.243(1)(t)(iii); MSA 4.1801(13)(1)(t)(iii). Emphasis added.]

Although obviously not directly applicable to this case, these provisions indicate that when names and addresses are linked with the fact of law enforcement employment, the privacy interest is augmented.

Second, the State Police Department's promise of confidentiality regarding this information also weighs on the side of a heightened privacy interest. As Justice RILEY points out, the department's rule provides:

> A complete employee personnel list shall be filed with the department of each licensee on a quarterly basis. *This list shall be kept confidential except for office use.* [1979 AC, R 28.4003. Emphasis added.]

In *Washington Post Co, supra,* the court discussed how a pledge of confidentiality may affect the privacy interests at stake in a federal FOIA case:

Other things being equal, release of information provided under a pledge of confidentiality involves a greater invasion of privacy than release of information provided without such a pledge. On the other hand, to allow the government to make documents exempt by the simple means of promising confidentiality would subvert FOIA's disclosure mandate. *On balance, we believe that a government pledge of confidentiality, made in good faith and consistently honored, should generally be given weight on the privacy side of the scale in accord with its effect on expectations of privacy. Cf. Ditlow v Shultz,* [170 US App DC 352, 358] 517 F2d 166, 172 (1975) (footnote omitted) ("the absence of a governmental assurance of confidentiality . . . would seem to undercut the privacy expectations protected by exemption 6"). However, such a pledge should not be given determinative weight where the public interest in disclosure is high and the privacy interest in the information would otherwise be low. See *Ackerly v Ley,* [137 US App DC 133, 137, n 3] 420 F2d 1336, 1340, n 3 (1969) ("pledge of confidentiality . . . can not, in and of [itself], override the Act"); *Robles v EPA,* 484 F2d 843, 846 (CA 4, 1973) (similar). [*Id.,* p 150. Emphasis added.]

Clearly, the Department of State Police had good public policy and safety reasons for promulgating the confidentiality rule. Those reasons presumably do not include the subversion of FOIA requests. This conclusion is supported also by the existence of the specific law enforcement exemptions. There have been no allegations of bad faith or a lack of consistency in applying the confidentiality rule. Thus, the pledge should "be given weight on the privacy side of the scale in accord with its effect on expectations of privacy."

In Justice LEVIN's abbreviated discussion of the confidentiality pledge, it merely observes that

> because privacy is so subjective a concept—virtually anything can be embarrassing in the appropriate circumstance—we regard as significant the absence of evidence establishing or even tending to show that the requested information is personal in nature. We are not willing to "deem" addresses personal in nature as a matter of law.

On the contrary, factoring the confidentiality pledge into the privacy interest side of the balancing test would not amount to a declaration that all addresses are highly personal.

## II

The public interest in disclosure in this case is minimal. In this respect, I agree with Justice LEVIN. The union's interest in this information is primarily a proprietary one. Moreover, a general interest in the encouragement of collective bargaining is not a compelling public interest.

A federal case from the Court of Appeals for the Fourth Circuit supports this conclusion. In *American Federation of Government Employees v Dep't of Health & Human Services,* 712 F2d 931 (CA 4, 1983), the union sought disclosure of the addresses of 20,000 bargaining unit employees of the Social Security Administration headquarters for purposes of communicating with them about the union. Employing the *Rose* balancing test, the court noted the employees' privacy interest in their home addresses. Turning to the public interest, the court concluded that

> even granting that collective bargaining is a matter of grave public concern, any benefits flowing

from disclosure of the information sought would
inure primarily to the union, in a proprietary
sense, rather than to the public at large. [*Id.*, p
932.]

Thus, the court struck the balance in favor of the
employees' privacy interest and against the un-
ion's interest when the only identifiable public
interest was the furtherance of collective bargain-
ing.

Thus, I find it unnecessary to reach the question
whether the body of public interests cognizable
under the Michigan FOIA should be circumscribed
by the act's preamble or be interpreted more
broadly. However public interest is defined, it is
clear that the interests served by disclosure in this
case do not rise to that level.

Even assuming an initial " 'tilt' in favor of
disclosure," *Kestenbaum, supra,* p 561, when the
privacy interests in this case are balanced against
this minimal, possibly nonexistent, public interest,
the privacy interests clearly tip the scale in favor
of nondisclosure. I believe that the department's
exemption of these records from disclosure was
entirely within the dictates of our state FOIA.
Therefore, I would reverse the judgment of the
Court of Appeals. I concur in part V of my brother
LEVIN's opinion concerning attorney fees.

CAVANAGH, J., took no part in the decision of
this case.